690 A.2d 260

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Mark Patrick YANOFF, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1996.

Filed Feb. 12, 1997.

224

226

Thomas R. Ceraso, Greensburg, for appellant.

Bradley K. Hellein, Assistant District Attorney, Kittanning, for Commonwealth, appellee.

Before HUDOCK, FORD ELLIOTT and HESTER, JJ.

HUDOCK, Judge.

This is an appeal from the judgment of sentence after Appellant was convicted by a jury of murder of the third degree and aggravated assault.[1] Post-trial motions were denied and Appellant was sentenced to 117 months to 240 months imprisonment. As part of the sentence, the trial court ordered Appellant to make restitution to the parents of the victim in the amount of $6,396.00 for funeral expenses incurred, and to the Bureau of Laboratory and Communication Services (Bureau) in the amount of $1,607.15. Appellant filed a post-sentence motion to modify sentence. The trial court entered an amended order modifying the parole. This timely

---

1. 18 Pa.C.S.A. § 2502(c) and 18 Pa.C.S.A. § 2702(a)(1), respectively.

appeal followed. For the reasons set forth below, we affirm as to all issues save the restitution order regarding the Bureau.

The facts and procedural history may be summarized as follows: On August 2, 1994, Appellant and Kirk Commodore (victim), along with Appellant's son and another individual, began the day fishing near Iron Bridge in Ford City. The foursome then went to Paradise Beach also near Ford City. After this excursion, Appellant dropped off his son and the fourth companion and proceeded with the victim to two bars.

While at the second bar, Appellant noticed the Ford City Chief of Police, Jan Lysakowski (the Chief). The Chief was approaching Appellant when the victim stopped and spoke with him briefly. The Chief then approached Appellant and they proceeded outside the bar to talk. During this conversation, Appellant mentioned the victim's possible involvement in various drug activities in Ford City.

Appellant then rejoined the victim inside the bar. The victim became upset with Appellant and inquired as to the content of the conversation between Appellant and the Chief and whether Appellant mentioned his name. Appellant denied ever discussing the victim with the Chief.

Appellant and the victim then played several rounds of pool. Later, Appellant told the victim that he wanted to fish with his son again. Appellant and the victim arrived at Appellant's house. Appellant's wife informed him that his son could not go fishing. Appellant then retrieved his nine millimeter semi-automatic handgun and left the house with the victim.

Appellant and the victim began to proceed back to Iron Bridge. On the way, the victim directed Appellant to navigate down a narrow wooded lane and park the car.

Appellant claimed that he parked the car and, as he was turning off the engine, the victim began to strike him. Appellant stated that he exited the car and was pursued by the victim. Appellant warned the victim that he had a pistol. Appellant testified that the victim responded that he was not afraid of firearms. Appellant then fired four rounds from the weapon in the opposite direction from the victim's voice.

Appellant testified that the victim then tackled him from behind and began hitting him in the back of the neck with a can of beer. According to Appellant, the victim began biting him on the ear and face, including his nose. They both struggled over the gun. The victim stood up and stated that he was going to smash Appellant's face with a rock and kill him. The victim then attempted to run away from Appellant. Appellant pointed the gun toward the victim and fired four rounds into his back.

The victim was not killed instantly. Appellant attempted to transport the victim to a hospital, however, the victim resisted and began to struggle with Appellant. Appellant was eventually able to place the victim in his car and transport him to the Ford City Hospital. The victim later died from the gunshot wounds.

A Pennsylvania State Trooper, Mark Ponosby (Ponosby), interviewed Appellant at the hospital shortly after the shooting. After being advised of his *Miranda* rights, Appellant stated that the victim was running away from him when he fired the weapon. Ponosby testified at trial that Appellant stated that the victim was approximately fifteen to twenty feet away when he fired the gun, that he saw the victim fall down after these shots were fired, and that Appellant was in close proximity to his car when he shot the victim.

Appellant raises the following issues on appeal:

A. Whether a new trial should be granted where the evidence presented by the Commonwealth was insufficient to support a conviction for third degree murder as an inference of malice was negated by the Commonwealth's evidence.

B. Whether the trial court erred in limiting counsel for Appellant from developing evidence of Appellant's knowledge of disruptive or violent acts done by the victim when presenting a self-defense argument.

C. Whether the trial court erred in failing to modify its sentence that Appellant make restitution to the parents of the victim and the [Bureau].

D. Whether the trial court committed a manifest abuse of discretion in failing to modify its sentence of no less than one hundred [ ] seventeen months nor more than two hundred [ ] forty months where the court focused entirely on the criminal act found by the jury and ignored the undisputed mitigating factors presented to the court, and where the Commonwealth did not request the mandatory minimum sentence.

Appellant's Brief at p. 4. We will review Appellant's issues in the order in which they appear.

■ We first note that if we find merit to Appellant's sufficiency claim, the proper remedy is discharge, not a new trial as requested by Appellant.

We have held that in reviewing the sufficiency of the evidence in a criminal case, the test:

> is whether, viewing all evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Torres*, 396 Pa.Super. 499, 501, 578 A.2d 1323, 1324 (1990) (citations omitted). In addition, "[i]t is the prerogative of the fact-finder to believe all, part, or none of the evidence presented." *Commonwealth v. Blassingale*, 398 Pa.Super. 379, 388, 581 A.2d 183, 187 (1990) (citing *Commonwealth v. Lyons*, 382 Pa.Super. 438, 555 A.2d 920 (1989)).

We have stated that a person may be convicted of third-degree murder where the murder "is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought." *Commonwealth v. Pigg*, 391 Pa.Super. 418, 425, 571 A.2d 438, 441, *alloc. den.*, 525 Pa. 644, 581 A.2d 571 (1990). "Malice is the essential element or gravamen of third degree murder, the distinguishing factor between murder and manslaughter." *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 559, 618 A.2d 945, 951 (1992).

We have defined malice as a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Pigg*, 571 A.2d at 441 (*quoting Commonwealth v. Drum*, 58 Pa. 9, 15 (1868)). "In addition, malice may be inferred from the use of a deadly weapon upon a vital part of the body." *Stidham*, 618 A.2d at 951 (citing *Pigg*, 571 A.2d at 441). Malice "may also exist where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury." *Stidham*, 618 A.2d at 951 (citing *In Interest of Smith*, 396 Pa.Super. 624, 637, 579 A.2d 889, 895 (1990)).

This Court has held that "where an accused raises the defense of self-defense under [section 505 of the Pennsylvania Crimes Code], the burden is on the Commonwealth to prove beyond a reasonable doubt that the homicide was *not* a justifiable act of self-defense." *Commonwealth v. McClain*, 402 Pa.Super. 636, 642, 587 A.2d 798, 801, *alloc. den.*, 528 Pa. 636, 598 A.2d 993 (1991) (emphasis in original) (citing *Commonwealth v. Burns*, 490 Pa. 352, 416 A.2d 506 (1980)). *See also Commonwealth v. Miller*, 430 Pa.Super. 297, 303–05, 634 A.2d 614, 617 (1993), *alloc. den.*, 538 Pa. 622, 646 A.2d 1177 (1994). The Commonwealth, however, sustains this burden if "it establishes *at least one* of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *McClain*, 587 A.2d at 801 (emphasis in original) (citing *Commonwealth v. Stonehouse*, 521 Pa. 41, 59, 555 A.2d 772, 781 (1989)). We have also held that "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim." *Miller*, 634 A.2d at 617.

■ Appellant argues that the Commonwealth failed to disprove his claim of self-defense beyond a reasonable doubt. Appellant states that he received multiple abrasions and bite

marks on his face and body which indicated a struggle with the victim. In addition, Appellant contends that he fired his weapon only after the victim threatened to kill him.

We cannot accept Appellant's argument. Ponosby testified that Appellant told him that the victim was fifteen to twenty feet away from him when he fired the shots. In addition, Ponosby testified that Appellant stated the victim was not running toward him but, rather, was running away from him as he fired his gun. Finally, Ponosby testified that at all times during the struggle and the discharge of the weapon, Appellant was near his car.

The Supreme Court has held that before deadly force may be used in self-defense, outside a defendant's dwelling, the defendant has a duty to retreat, if the retreat can be performed safely. *Commonwealth v. Commander*, 436 Pa. 532, 540–42, 260 A.2d 773, 778 (1970). In the present case, the evidence supports a conclusion that Appellant could have retreated to his car while the victim was running away from him, and that he could have made this retreat in complete safety. The duty to retreat clearly applied, given the facts of this case. If Appellant had entered his car and began to flee, the victim, even if armed with a rock, could not have posed a substantial threat to Appellant's life to justify the use of deadly force.

The fact that Appellant shot the victim in the back clearly undermines his claim of self-defense. In a case dealing with self-defense within a residence, we have concluded that where a defendant has sole possession of a deadly weapon and inflicts fatal blows upon the victim's back, a claim of self-defense will necessarily fail. *Commonwealth v. Gelber*, 406 Pa.Super. 382, 391–93, 594 A.2d 672, 677 (1991), *alloc. den.*, 529 Pa. 667, 605 A.2d 332 (1992) (where appellant stabbed victim twenty times, including fourteen times in the back, inflicted from behind, claim of self-defense lacked merit). Thus, we hold, upon viewing the evidence in the light most favorable to the Commonwealth, that because the car was near Appellant and the victim was running away from Appellant when Appellant shot him in the back, Appellant's argument that the Commonwealth

failed to disprove his claim that the killing was in self-defense lacks merit.

As his second issue, Appellant contends that the trial court erred in denying him the opportunity to admit evidence of his knowledge of the victim's violent and disruptive character to support his self-defense claim. As a result, Appellant requests a new trial.

Initially, we note that Appellant argues, without citation to any authority, that he should have been allowed to introduce opinion testimony from the Chief that the victim exhibited behavior consistent with that of someone under the influence of drugs. While it is true that evidence of a victim's prior violent conduct is relevant to establish both the victim's character for violence and the reasonableness of defendant's belief that he was in danger of death or serious bodily injury, see Commonwealth v. Beck, 485 Pa. 475, 477–80, 402 A.2d 1371, 1373–74 (1979), being under the influence of drugs is not necessarily violent conduct. Furthermore, Appellant's question to the Chief solicited an objectionable opinion, since the witness had not been qualified to render such an opinion.

Appellant also complains he was not permitted to ask the Chief whether throwing a powerful firecracker, an M80, into a bar might be a "disruptive act". First, we note that the Chief fully testified to all he knew about the incident. He testified that the victim was not responsible for the incident at the bar, and that the victim told him he had nothing to do with the M80 exploding at the bar. Counsel's attempt to have the witness describe throwing an M80 as a "disruptive act" called for an opinion which was irrelevant, even if it is concluded that such an act is violent within the meaning of Beck, supra.

As his third issue, Appellant argues that the trial court erred in ordering him to make restitution to both the parents of the victim and the Bureau. Appellant argues that the restitution amount was speculative because the trial court did not set forth on the record its basis for establishing the restitution amount. In addition, Appellant contends that the restitution order regarding the victim's parents was excessive

because, at the time of sentencing, he did not possess any assets, was unemployed, and was married with four children. Furthermore, Appellant states that the restitution order regarding the Bureau was improper due to a recent Supreme Court case, *Commonwealth v. Runion*, 541 Pa. 202, 204, 662 A.2d 617, 619 (1995), which held that "governmental agencies of this Commonwealth are excluded from the definition of 'person'" and therefore, may not be considered as a victim under the statute permitting restitution.

■ The Commonwealth contends that the restitution order as to the parents of the victim is supported by the record. The Commonwealth, however, does concede that the restitution order regarding the Bureau was improper pursuant to the ruling in *Runion*. Thus, we vacate that portion of Appellant's sentence which directs restitution be made to the Bureau.

■ An order of restitution is governed under section 1106 of the Pennsylvania Crimes Code which provides that:

(a) **General rule.** Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa.C.S.A. § 1106(a). Restitution applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable. *Commonwealth v. Harner*, 533 Pa. 14, 19–20, 617 A.2d 702, 705 (1992).

■ By ordering a defendant to pay restitution, a trial court serves two purposes. Specifically, "[w]hile the payments may compensate the victim, the sentence is also meant to rehabilitate the defendant by instilling in her mind *that it is her responsibility* to compensate the victim." *Commonwealth v. Gerulis*, 420 Pa.Super. 266, 288, 616 A.2d 686, 697 (1992), *alloc. den.*, 535 Pa. 645, 633 A.2d 150 (1993) (emphasis in original). In ordering restitution, however, a court "must

make sure that the amount awarded not only does not exceed damages to the victim, but also does not exceed the [appellant's] ability to pay." *Commonwealth v. Torres*, 396 Pa.Super. 573, 581, 579 A.2d 398, 401 (1990), *appeal dismissed*, 528 Pa. 346, 598 A.2d 27 (1991) (*quoting Commonwealth v. Celane*, 311 Pa.Super. 93, 102, 457 A.2d 509, 514 (1982)). We have developed four factors that a sentencing court must consider before imposing restitution. Specifically, these factors are:

> (1) the amount of loss suffered by the victim; (2) the fact that defendant's action caused the injury; (3) the amount awarded does not exceed defendant's ability to pay; [and] (4) the type of payment that will best serve the needs of the victim and the capabilities of the defendant.

*Commonwealth v. Valent*, 317 Pa.Super. 145, 149, 463 A.2d 1127, 1128 (1983) (citations omitted). *See also Commonwealth v. Jackson*, 376 Pa.Super. 433, 439, 546 A.2d 105, 108 (1988). In addition, the sentencing court must apply a "but for" test in imposing restitution. We have held that "damages which occur as a direct result of the crimes are those which should not have occurred but for the defendant's criminal conduct." *Gerulis*, 616 A.2d at 697.

 The sentencing court was furnished with a presentence report which itemized the expenses incurred by the victim's parents as a result of Appellant's criminal act.[2] The total amount of these expenses equaled the amount of the restitution order.

Appellant retorts that although the presentence report was in the court's possession, the sentencing court was required to set forth its findings regarding the restitution amount on the record. Appellant contends that, because the court failed to do so, the amount ordered is unsupported by the record.

The Commonwealth argues that the restitution amount is neither speculative nor excessive. To support its argument, the Commonwealth states that Appellant and his wife survived three years where Appellant chose not to work while his

---

2. These itemized expenses listed the funeral costs incurred by the victim's parents.

spouse attended and finally graduated from nursing school. The Commonwealth contends that Appellant and his wife will "be in a better financial position upon his release from prison if his wife has a nursing job *and* he gets any job." Appellee's Brief at p. 15 (emphasis in original). The Commonwealth also refers to the presentence report which reveals that Appellant was employed in areas outside of his expertise in military and police training. Specifically, the Commonwealth points out that Appellant was employed as a truck driver, a carpet and furniture cleaner, a general laborer, and a custodian.

At the sentencing hearing, the court acknowledged that Appellant did not possess any assets but added that the report "also shows that [Appellant] has had a long steady history of employment, ... and [ ] that he does have [the] ability to pay restitution over the term of any parole supervision that he may encounter at a later date." N.T., 7/21/95, pp. 44–45. Therefore, the court determined that the restitution order was not excessive.

We have held that "[w]hile the payment of restitution may be a hardship for [an] appellant, the fact that a defendant may have to make substantial sacrifices is not an obstacle to a restitution order." *Commonwealth v. Boyles*, 407 Pa.Super. 343, 361, 595 A.2d 1180, 1189 (1991), *alloc. den.*, 531 Pa. 651, 613 A.2d 556 (1992) (citations omitted). In addition, "an order of restitution need not be in an amount which can be paid from a defendant's current earnings." *Id.* (citing *Commonwealth v. Madron*, 339 Pa.Super. 105, 488 A.2d 331 (1985)). Further-more, "an order of restitution may properly require additional or alternative employment, a reduction of expenses, and even a temporary change in lifestyle in order to achieve that sense of responsibility which signals effective rehabilitation." *Com-monwealth v. Wood*, 300 Pa.Super. 463, 468, 446 A.2d 948, 950 (1982). We have reasoned that such. an order of restitution will cause the defendant "to consider more carefully the consequences of his or her acts and thereby strengthen the offender's sense of responsibility." *Id.*

We note that even though the report indicated that Appel-lant did not possess any assets, Appellant does not have to

render restitution payments from his current earnings. We conclude that, because Appellant has had a long employment history which establishes his ability to acquire employment, along with his spouse's ability to secure a nursing position, the restitution award was not excessive. Moreover, we do not find that the restitution award was speculative. As noted, the amount awarded equaled the amount of expenses the victim's parents incurred to provide funeral services for the victim.

▮ As his last issue on appeal, Appellant contends that the trial court abused its discretion in failing to modify its sentence where the court failed to focus on mitigating factors presented by Appellant and where the Commonwealth did not request the mandatory minimum sentence. Appellant asks this Court to vacate the sentence and remand the case for resentencing.

▮ As Appellant is challenging the discretionary aspects of sentencing, there is no right to appeal to this Court and the present appeal must be considered as a petition for permission to appeal. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987); 42 Pa.C.S.A. § 9781(b). There are four prerequisites to the proper preservation of an issue regarding the discretionary aspects of sentencing: 1) the issue must be specifically preserved in a timely motion to modify sentence;[3] 2) a timely notice of appeal must be filed; 3) the issue must be set forth in the issues to be raised on appeal in the statement of questions presented; and 4) the issue must be included within a concise statement of reasons for allow-

3. The Comment to new Pennsylvania Rule of Criminal Procedure 1410 states that issues raised at the sentencing proceeding need not, but may, be raised in a motion to modify sentence in order to preserve them for appeal. *See* Pa.R.Crim.P. 1410, 42 Pa.C.S.A., Comment (Miscellaneous) ¶ 6; *see also Commonwealth v. Egan*, 451 Pa.Super. 219, 221–23, 679 A.2d 237, 238 (1996) (Superior Court may address claim even though it was not raised in motion to modify where issue could be addressed based upon review of sentencing transcript). *Cf. Commonwealth v. Jarvis*, 444 Pa.Super. 295, 299 n. 4, 663 A.2d 790, 792 n. 4 (1995) (if defendant's objection to sentence imposed is not sufficiently raised at sentencing hearing, even under new rule, defendant must file motion to modify sentence to preserve challenge to discretionary aspects of sentencing; such claims may not be raised for the first time on appeal).

ance of appeal which demonstrates a substantial question that the sentence imposed was not appropriate under the Sentencing Code. *See generally Commonwealth v. Penrod,* 396 Pa.Super. 221, 578 A.2d 486 (1990). Appellant has satisfied the first three requirements. Thus, we must determine whether Appellant's claim raises a substantial question.

We have held that, while sentencing courts are given wide latitude in fashioning sentences, such discretion is not unfettered. *See generally Commonwealth v. Chilcote,* 396 Pa.Super. 106, 578 A.2d 429 (1990), *alloc. den.,* 527 Pa. 615, 590 A.2d 756; 527 Pa. 622, 592 A.2d 42 (1991); *appeal dismissed,* 533 Pa. 357, 625 A.2d 614 (1993). In short, we will not vacate a sentence that is within the statutorily prescribed limits and remand for resentencing absent a manifest abuse of discretion. *Commonwealth v. Zelinski,* 392 Pa.Super. 489, 500–01, 573 A.2d 569, 575, *alloc. den.,* 527 Pa. 646, 593 A.2d 419 (1990). Thus, the determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Losch,* 369 Pa.Super. 192, n. 7, 535 A.2d 115, 119 n. 7 (1987). However, this Court will be inclined to allow an appeal where an appellant advances a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Id.*

Appellant argues that the sentencing court failed to consider mitigating factors in rendering its sentence. This claim does not raise a substantial question. *See Commonwealth v. Williams,* 386 Pa.Super. 322, 326–28, 562 A.2d 1385, 1388 (1989) (claim of failure to consider mitigating factors where court has presentence report containing those factors does not raise a substantial question). Moreover, as our Supreme Court has held, "[w]here pre-sentence reports exist, we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers,* 519 Pa. 88, 102, 546 A.2d 12, 18 (1988). In addition, "[h]aving been fully informed by the pre-

238

sentence report, the sentencing court's discretion should not be disturbed." *Id.*

In the present case, the sentencing court was furnished with a presentence report which contained mitigating factors. The court weighed those mitigating factors on the record by setting Appellant's length of incarceration three months below the maximum minimum standard range. We will not substitute our opinion for that of the sentencing court. *Williams,* 562 A.2d at 1388.

For the foregoing reasons, we affirm the trial court's ruling save the restitution order regarding the Bureau.

Judgment of sentence is affirmed in part and vacated in part. Petition for permission to appeal is denied. Jurisdiction relinquished.