J-S68001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHEEM HALL, | |
| Appellant | No. 3161 EDA 2012 |

Appeal from the Judgment of Sentence entered December 14, 2010,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0010569-2009
and CP-51-CR-0010570-2009

BEFORE:  ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED OCTOBER 24, 2014**

Rasheem Hall ("Appellant") appeals from the judgment of sentence entered after a jury convicted him of first-degree murder, aggravated assault, criminal conspiracy, possessing an instrument of crime, and violation of the Uniform Firearms Act.[1]  Appellant's convictions arose from his involvement in a shootout on a residential street in Philadelphia.

The trial court explained the procedural history of this case as follows:

On August 26, 2010, [Appellant] was found guilty by a jury … on case no. **CP 51 CR 0010570 2009** of:  First Degree Murder, as a felony of the first degree; Criminal Conspiracy, as a felony of the first degree; Possession of an Instrument of Crime (PIC), as a misdemeanor of the first degree; and, Violation of the Uniform Firearms Act section 6108 (VUFA 6108), as a misdemeanor of the first degree.  He was found guilty on case

_____

[1]18 Pa.C.S.A. §§ 2502, 2702, 903, 907 and 6108.

no. **CP 51 CR 0010569 2009** of Aggravated Assault, as a felony of the first degree.

On December 14, 2010, [Appellant] was sentenced to a mandatory sentence of life imprisonment without the possibility of parole for the First Degree Murder conviction; five (5) to ten (10) years' incarceration for the Criminal Conspiracy conviction; two and one-half (2½) to five (5) years' incarceration for the PIC conviction; two and one half (2½) to five (5) years' incarceration for the VUFA 6108 conviction; and five (5) to ten (10) years' incarceration for the Aggravated Assault conviction. All sentences to run concurrently.

On March 2, 2011, [Appellant] filed a petition under the Post Conviction Relief Act (PCRA) claiming ineffective assistance of counsel for failure to file a post-sentence motion and a direct appeal. [FN1 It should be noted that Bernard Siegel, Esq., [Appellant's] trial counsel is deceased.]

On May 22, 2012, PCRA counsel was permitted to withdraw.

On May 29, 2012, new PCRA counsel was appointed.

On October 22, 2012, by agreement, the PCRA petition was granted in part and denied in part. The PCRA court ordered [Appellant's] direct appellate rights reinstated and denied [Appellant's] request to file post sentence motions *nunc pro tunc*.

On November 19, 2012, [Appellant] filed the instant appeal.

On June 27, 2013, [Appellant] filed a 1925(b) statement[.]

Trial Court Opinion, 9/5/13, at 1-2 (bold in original).

Appellant raises two issues for our review:

I. Is [Appellant] entitled to an arrest of judgment on all charges including Murder in the First Degree, Criminal Conspiracy, Aggravated Assault, PIC and VUFA, where the evidence is insufficient to sustain the verdict because (1) the Commonwealth did not prove by sufficient evidence or beyond a reasonable doubt that [Appellant] was a principal, accomplice or a criminal conspirator to any crime

and (2) where the Commonwealth did not prove beyond a reasonable doubt that [Appellant] had failed to act in self-defense?

II. Is [Appellant] entitled to a new trial where the verdict is not supported by the greater weight of the evidence but rather, where the verdicts rests [sic] on speculation, conjecture and surmise?

Appellant's Brief at 3.

In his first issue, Appellant challenges the sufficiency of the evidence.

Our standard of review is well-settled:

When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. King*, 990 A.2d 1172, 1178 (Pa. Super. 2010) (internal citations omitted).

Appellant summarized his argument:

The Commonwealth did not prove beyond a reasonable doubt nor by sufficient evidence that [Appellant] shot and killed anyone nor shot and wounded anyone. The Commonwealth did not prove that he acted as a criminal conspirator nor as an accomplice. The only Commonwealth's evidence demonstrated was that [sic] [Appellant] was attempting to protect himself after being shot at on the public street by others.

Appellant's Brief at 7.

Appellant's trial lasted four days. The trial court recounted the testimony as follows:

[Appellant] was arrested on August 4, 2008 after multiple attempts by the Fugitive Squad and other law enforcement agencies to locate him. (Notes of Testimony, Trial (Jury) Volume 1, August 24, 2010, pages 40 – 52).

Police Officer Nona Stokes testified that on May 20, 2007, she received a report of shots fired in the area of 16th and York Streets in Philadelphia. When she arrived on the scene, she saw a female, later identified as Charlene McDonald, standing on the corner of 16th and York Streets, bleeding from a gunshot wound to her leg. Officer Stokes was advised that another shooting victim, later identified as Ronald Kennel, (hereinafter referred to as the decedent), was lying in the street in front of 1601 North York Street, with a gunshot wound to his head. Medic units transported Ms. McDonald and the decedent to Temple Hospital. Officer Stokes went to Temple Hospital where she interviewed Ms. McDonald and a witness by the name of Tracey Lester. Ms. Lester told Officer Stokes at the hospital that she saw the shooting and identified "Dave" (later identified as David Satchell, hereinafter referred to as Satchell) and "Rasheem" (hereinafter referred to as [Appellant], as the shooters. (NT, id, pages 62 – 71, 73).

Tracey Lester testified at the [Appellant's] trial that on May 20, 2007, she was at a block party on the 2400 block of Bancroft Street in Philadelphia. She was standing in the middle of Bancroft Street when she saw the [Appellant], Satchell and other boys walking west on Cumberland Street going toward 17th Street. She has known the [Appellant] and Satchell for years. She heard people screaming, "They have guns. Get the kids in the house". Seconds later, she heard gunshots coming from around the corner. She ran into her house at 2402 Bancroft Street. Satchell and two other males ran up Bancroft Street. Satchell ran onto her porch with a gun in his hand. She blocked the door so he could not get inside her house. Without being asked, she volunteered testimony that the [Appellant] was not one of the other two (2) boys she saw running with Satchell up Bancroft Street. (NT, id, pages 82 – 88).

- 4 -

Ms. Lester denied that she told Officer Stokes at Temple Hospital that [Appellant] was one of the males she saw running with Satchell. She testified that she never spoke to Officer Stokes but only to the two (2) homicide detectives at the homicide unit. (NT, id, page 89).

In her statement to Homicide Detectives, Ms. Lester identified the two (2) males running from the scene with guns in their hands as [Appellant] and Satchell. She described the gun that Satchell was carrying as a silver, .9mm with a black handle and that [Appellant] was holding the gun he was carrying, down to his side as he was running. She also indicated that she had seen [Appellant] with a gun on a previous occasion. (NT, id, pages 97 – 103).

Ms. Lester testified at Satchell's preliminary hearing and trial and at [Appellant's] preliminary hearing. In each of those proceedings, she testified that she saw [Appellant] with a gun immediately after she heard gunshots coming from around the corner. At [Appellant's] preliminary hearing, she testified that minutes after the shooting stopped she saw [Appellant] running up Bancroft Street with a big silver gun in his hand. (NT, id, pages 92 – 117).

Charlene McDonald testified that she was standing at 16th and York Streets waiting for the bus on May 20, 2007. She heard a gunshot and started to run and then fell to the ground. She had a gunshot wound to her right tibia. She was in the hospital for two (2) days and had physical therapy for the next two (2) months. She still has pain and experiences discomfort in doing everyday activities. (NT, id, pages 133 – 135).

Derrick Williams testified at [Appellant's] trial that he has known [Appellant], (who he knows as "Sheem"), and Satchell for most of his life. He also knew the decedent as "Hat". He was present on the 1600 block of York Street when the decedent was shot and killed. On the day of the shooting, he was sitting on the steps of 1614 York Street with his aunt and a friend. Three (3) males came around the corner of 17th Street and started shooting at three (3) of his friends: Satchell, Hakim and Faith Anderson, who were walking up the block. He testified that [Appellant] was not present on the scene. (NT, id, pages 196 – 198).

In the statement Mr. Williams gave to homicide detectives on December 4, 2008, he indicated that he was sitting on the

steps of 1614 York Street with his Aunt Kim and "TJ" Sikes "talking about this boy, Reggie, who got killed earlier that day at 15th and York". He saw [Appellant], Satchell, and Hakim walking on York Street from 16th Street towards Bancroft Street. He looked down York Street towards 17th Street and saw a male he knows as "Sife" and two (2) other males holding guns. They started shooting at [Appellant], Satchell and Hakim. [Appellant], Satchell and Hakim pulled out guns and started firing also. He saw the decedent lying on the ground shaking. When the shooting stopped, he saw [Appellant], Satchell, and Hakim run up Bancroft Street. [Appellant] and Satchell tried to enter Tracey Lester's house. After Ms. Lester refused to allow them to enter, [Appellant] and Satchell ran up Bancroft Street and jumped over a fence. (NT, id, pages 205 – 208).

In his statement, Mr. Williams described the gun that [Appellant] was carrying as a dark grey and light grey .40 caliber hand gun. He identified and placed his signature on photographs of [Appellant], Satchell, Sife and the decedent. (NT, id, pages 209 – 210).

Mr. Williams testified at Satchell's trial that [Appellant] was with Satchell during the shootout at Bancroft and York Streets and that after the gunfire stopped, he saw Satchell, [Appellant] and Hakim run up Bancroft Street. At that trial, he placed an "R" on a diagram used at Satchell's trial to indicate where [Appellant] was standing when the shooting was taking place. (NT, id, pages 212 214).

At [Appellant's] trial, Mr. Williams testified that he did not remember identifying [Appellant] in his statement or testifying at Satchell's trial that [Appellant] was with Satchell. He testified that homicide detectives inserted [Appellant's] name in his statement.

Dr. Edwin Lieberman, an assistant medical examiner from the City of Philadelphia, testified that he reviewed the report and slides pertaining to the autopsy of the decedent. Based on his independent review, he opined that a gunshot wound to the head was the cause of death and that the manner of death was homicide. He indicated that a bullet entered the decedent's body in the middle of his right eyebrow over his forehead that resulted in instantaneous death. He opined that the gunshot wound to the decedent's head was not a contact wound, meaning that the muzzle was not in contact with the decedent's forehead and as

- 6 -

there was no stipple, the shot must have been fired from at least two and one-half (2 ½) feet away. (NT, id, pages 138, 141 – 145).

Police Officer John Cannon testified that he is assigned to the Firearms Identification Unit. He examined the ballistic evidence recovered from the scene. Twenty (20) fired cartridge casings were recovered from the scene. Of those twenty (20) fired cartridge casings; seven (7) were from a .40 caliber semiautomatic firearm, nine (9) were from a second .40 caliber semiautomatic firearm and four (4) were from a .9 millimeter Luger. He also examined three (3) bullets; two (2) bullet jackets; and four (4) bullet jacket fragments. Two (2) of the bullets were recovered from the scene and one (1) was recovered from the decedent's head. The bullets were fired from different firearms. From this evidence, Officer Cannon opined that there was a minimum of four (4) different guns fired. No weapons were recovered. (Notes of Testimony, Trial (Jury) Volume 1, August 25, 2010, pages 112 – 134).

Trial Court Opinion, 9/5/13, at 2-6.

Appellant's sufficiency argument focuses on his first-degree murder, conspiracy and aggravated assault convictions. Appellant's Brief at 8-14. First-degree murder is defined as "criminal homicide … when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). Conspiracy occurs when an individual "has the intent of promoting or facilitating [the] commission [of a crime and] agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a). An "overt act" must be "alleged and proved" to support conspiracy. 18 Pa.C.S.A. § 903(e). Aggravated assault occurs when an individual "attempts to cause serious bodily injury to another, or causes such injury intentionally,

- 7 -

knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a).

Appellant argues that his convictions are unsupported by sufficient evidence because he did not shoot or wound anyone, and "the evidence established that [Appellant] and others had returned fire after being shot at." Appellant's Brief at 11.

In **Commonwealth v. Jones**, 610 A.2d 931, 938 (Pa. 1992), the defendant was convicted of first-degree murder, aggravated assault, criminal conspiracy and possessing an instrument of crime as a result of his involvement, with two other individuals, in a shooting which resulted in the deaths and woundings of bystanders in the courtyard of a Philadelphia housing project. In concluding that the evidence was sufficient to support the defendant's convictions, our Supreme Court explained:

> Appellant asserts that, in firing a barrage of twenty bullets at the people in the courtyard, he and his cohorts had no specific intent to kill. This assertion is patently without merit. Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Boyd,* 463 Pa. 343, 349–50, 344 A.2d 864, 867 (1975). Further, under the doctrine of transferred intent, criminal responsibility is not affected by the fact that the bullets struck persons other than the one for whom they were apparently intended []. *Commonwealth ex rel. McCant v. Rundle,* 418 Pa. 394, 395–96, 211 A.2d 460, 461–62 (1965) (transferred intent); 18 Pa.C.S. § 303(b)(1).

*Id.* at 938. This explanation is instructive and applicable to the instant case.

Moreover, with regard to Appellant's claim of self-defense, after hearing the evidence, the trial court instructed the jury on the elements of a

self-defense justification and the Commonwealth's burden of disproving the elements of self-defense. N.T., 8/26/10, at 39-44. The jury's verdicts demonstrate that they rejected Appellant's claim of self-defense, and as the finder of fact, credited the evidence submitted by the Commonwealth.

In addressing Appellant's claims, the trial court reasoned:

> The jury was instructed that they could consider eyewitnesses Lester's and Williams' statements to Homicide Detectives as substantive evidence. Both identif[ied] [Appellant] as being present during the shooting, armed with a weapon.
>
> Pennsylvania courts have permitted non-party witnesses to be questioned on prior statements they have made when those statements contradict their in-court testimony. *Commonwealth v. Carmody*, 799 A.2d 143, 148 (Pa.Super.2002). Such prior inconsistent statements may be offered not only to impeach a witness, but may also be offered as substantive evidence if they meet additional requirements of reliability. *Carmody*, id, citing *Brady*, 507 A.2d at 68, *Lively*, 610 A.2d at 9-10 and Pa.R.E. 613(a) and 803.1.
>
> ***
>
> The evidence showed that [Appellant] and his cohorts were involved in a shootout on a public street in broad daylight with a rival gang and struck two (2) innocent bystanders, killing one and injuring another.
>
> Furthermore, the specific intent to kill needed for First Degree Murder can be transferred.
>
> The doctrine of "transferred intent" has been codified in this Commonwealth and reads:
>
> **(b) Divergence between result designed or contemplated and actual result.**—When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor **unless**:
>
>> (1) **the actual result differs from that designed or contemplated as the case may be, only in the respect**

**that a different person or different property is injured** or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense. 18 Pa.C.S.A. § 303(b) (emphasis supplied). *See Commonwealth v. Gaynor*, 538 Pa. 258, 648 A.2d 295 (1994) (sets forth Commonwealth's burden under § 303(b)).

Furthermore, the ballistic evidence showed that at a minimum, four (4) different guns were involved in the shootout.

This evidence and all reasonable inferences deducible from that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to establish all the elements of the offenses beyond a reasonable doubt. …

\*\*\*

Where an accused raises the defense of self-defense, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *Commonwealth v. Yanoff*, 456 Pa.Super. 222, 690 A.2d 260 (1997). The Commonwealth sustains this burden if "it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Id*. at 264 (citations omitted). It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat. *Commonwealth v. Buksa*, 440 Pa.Super. 305, 655 A.2d 576 (1995).

Examining the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth sufficiently disproved [Appellant's] defense of self-defense by establishing that [Appellant] was not free from fault in provoking or continuing the gunfire that erupted. The evidence showed that the shootout was but part of an ongoing armed war

- 10 -

between rival groups, with [Appellant] and his cohorts electing to stand their ground, draw their weapons, and fire upon seeing armed rivals approaching them.

Trial Court Opinion, 9/5/13, at 7-10.

Given the foregoing, we find no merit to Appellant's sufficiency issue.

In his second issue, Appellant asserts that his convictions were against the weight of the evidence. Appellant states, "the greater weight of the evidence in this case only establishes that several young men were involved in difficulties on the street and that the Commonwealth witness Derrick Williams had offered evidence clearly indicating that [Appellant] and others with him open[ed] fire only after they were being shot at. The greater weight of the evidence did not establish that [Appellant] shot and wounded anyone nor that he acted as a co-conspirator or an accomplice." Appellant's Brief at 16.

Before addressing the merits of this claim, we note that the record is devoid of any evidence that Appellant has preserved his weight claim. Pa.R.Crim.P. 607 provides that a claim that a verdict is against the weight of the evidence must be raised with the trial judge in a motion for a new trial 1) orally, on the record before sentencing, 2) in writing, any time before sentencing, or 3) in a post-sentence motion. Failure to comply with Pa.R.Crim.P. 607 results in waiver. *See Commonwealth v. Little*, 879 A.2d 293, 300-301 (Pa. Super. 2005). The fact that a trial court addresses a claim in its Pa.R.A.P. 1925(a) opinion is of no consequence. *Commonwealth v. Washington*, 825 A.2d 1264 (Pa. Super. 2003) (failure

to raise a weight issue in a post-trial motion, despite the fact that the court addressed it in its opinion resulted in waiver of issue on appeal).

Here, Appellant did not raise his weight claim orally after the trial court rendered its verdict, (*see* N.T., 8/26/10), or at the sentencing hearing (*see* N.T., 12/14/10). Further, the record contains no written or post-sentence motion challenging the weight of the evidence.[2] Appellant's weight claim is waived.

In sum, we find no merit to Appellant's sufficiency issue, and decline to review Appellant's weight issue because it has been waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2014

_____

[2] The trial court granted Appellant *nunc pro tunc* reinstatement of his appellate rights, but denied *nunc pro tunc* reinstatement of Appellant's post-sentence motion rights. Trial Court Opinion, 9/5/13, at 2.