J-S05021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MAXWELL MARION MORTON | : | |
| | : | |
| Appellant | : | No. 905 WDA 2017 |

Appeal from the Judgment of Sentence May 15, 2017
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001626-2015

BEFORE: OLSON, J., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT:                                    **FILED AUGUST 22, 2018**

Maxwell Marion Morton appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his jury trial convictions of murder in the third degree and possession of firearm by minor.[1] We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Trial Court Opinion, 8/15/2017, at 1-5 (citations omitted). Therefore, we have no reason to restate them at length.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 6110.1(a), respectively. Morton was also found not guilty of murder of the first degree, *id.* § 2502(a), and involuntary manslaughter, *id.* § 2504(a).

We briefly note that, on February 4, 2015, in a bedroom at 1018 Rankin Avenue in Jeannette, Westmoreland County, Morton shot Ryan Mangan in the left eye; Morton then hid the firearm in his own home under the stairs leading to the basement. *Id.* at 1-3, *citing* N.T., 2/14/2017, at 90-92, 155 (testimony of Detective James Williams of the Westmoreland County District Attorney's Office). Detective James Williams was the first to arrive at the scene, at about 6:45 p.m., where he found Mangan's body in a green chair, slumped to the left, with a large amount of blood on the table and floor to the left of Mangan's body. *Id.* at 1-2, *citing* N.T., 2/14/2017, at 92 (testimony of Detective Williams).

During a subsequent interview, Morton told Detective Williams that he had been holding a firearm, looked down at it, looked at Mangan, and then pulled the trigger. *Id.* at 3, *citing* N.T., 2/14/2017, at 158 (testimony of Detective Williams). After the shooting, Morton cleaned up the fired cartridges, did not seek medical care for Mangan, stole Mangan's shoes, took a "selfie" photograph with Mangan as he was dying, fled the scene, and sent the "selfie" photograph to a fourteen-year-old friend, T.P. *Id.* at 2-4, 7, *citing* N.T., 2/14/2017, at 134-136; N.T., 2/15/2017, at 222-223 (testimony of T.P.), 263 (testimony of forensic pathologist, Cyril H. Wecht, M.D.); N.T., 2/16/2017, at 381-383 (testimony of Morton). T.P. informed police that Morton told him that he had "caught his first body." *Id.* at 3.

Morton now raises one issue for our review:

Did the [t]rial [c]ourt err in finding that the evidence was sufficient to support the jury verdict of [t]hird degree murder where the evidence presented was inconsistent with a finding of the element of malice required for [t]hird degree murder but rather the evidence presented was consistent with involuntary manslaughter where the shooting was accidental and [Morton]'s acts were reckless and/or grossly negligent.

Morton's Brief at 4.

Morton contends that "the trial court erred in allowing" the verdict of murder of the third degree "to stand" and that the evidence presented was "consistent" with involuntary manslaughter instead. ***Id.*** at 16-17. He maintains that "it is clear from the record that the shooting of Ryan Mangan was accidental." ***Id.*** at 18-19. He further argues that "the jury found [his] acts, post[-]shooting, so reprehensible that they reacted emotionally and not in accordance with the charge given them by the trial judge." ***Id.*** at 20.

In reviewing the sufficiency of the evidence, our standard of review is as follows:

Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fortson***, 165 A.3d 10, 14–15 (Pa. Super. 2017) (citation and internal brackets omitted) (some formatting), *appeal denied*, 174 A.3d 558 (Pa. 2017).

"Third-degree murder is defined 'all other kinds of murder' other than first degree murder or second degree murder. 18 Pa.C.S. § 2502(c).

- 3 -

The elements of third-degree murder, as developed by case law, are a killing done with legal malice." *Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009) (*en banc*) (citation and some internal quotation marks omitted). Here, there is no doubt that the killing of Ryan Mangan has occurred; thus, the only disputed element is whether Morton acted with malice. *See id.*

"[M]alice is an essential element of third-degree murder and is the distinguishing factor between murder and manslaughter." *Commonwealth v. Smouse*, 594 A.2d 666, 671 (Pa. Super. 1991).

> We have stated that a person may be convicted of third-degree murder where the murder is **neither intentional** nor committed during the perpetration of a felony, but contains the requisite **malice** aforethought. . . . We have defined malice as a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although **a particular person may not be intended to be injured**. In addition, **malice may be inferred from the use of a deadly weapon upon a vital part of the body**. Malice may also exist where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury.

*Commonwealth v. Yanoff*, 690 A.2d 260, 264 (Pa. Super. 1997) (emphasis added; internal citations and quotation marks omitted). The statutory definition of a "deadly weapon" includes "any firearm." 18 Pa.C.S. § 2301. A person's head has been found to be a vital part of the body. *E.g.*, *Commonwealth v. Poplawski*, 130 A.3d 697, 710 (Pa. 2015); *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015).

- 4 -

Accordingly, even if we accept Morton's representation that his actions were "accidental[,]" Morton's Brief at 16, he still could have been properly convicted of murder of the third degree.

"[M]alice may be inferred from the use of a deadly weapon upon a vital part of the body." *Yanoff*, 690 A.2d at 264. Here, Morton shot Mangan in his left eye. Trial Court Opinion, 8/15/2017, at 2-3. A firearm is a "deadly weapon." 18 Pa.C.S. § 2301. An individual's eye and, consequently, head are vital parts of the body. *Poplawski*, 130 A.3d at 710; *Hitcho*, 123 A.3d at 746. Hence, by shooting a firearm at Mangan's eye and head, Morton used a deadly weapon upon a vital part of Mangan's body, and malice can thereby be inferred. *Yanoff*, 690 A.2d at 264.

Furthermore, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner,[2] the evidence is clearly sufficient to establish malice. Morton told police that, immediately prior to the shooting, he looked at the firearm, looked at Mangan, and then fired the weapon. Trial Court Opinion, 8/15/2017, at 3. After shooting Mangan, he did not seek medical care for Mangan who was bleeding profusely, had the presence of mind to clean up the spent shells, callously stole Mangan's shoes, took a commemorative photograph of himself with Mangan as he was dying, fled the scene, bragged to a friend about the killing, and then proceeded to hide the firearm. *Id.* at 1-4, 7, *citing* N.T., 2/14/2017, at 92, 134-136; N.T.,

---

[2] *See Fortson*, 165 A.3d at 14.

2/15/2017, at 222-223, 263; N.T., 2/16/2017, at 381-383. The testimony and evidence of these actions, namely, Morton's shooting of Mangan was not accidental, he was aware of what he was doing before, during, and after the shooting, and he was proud of his actions demonstrate "a wickedness of disposition, hardness of heart, [and] cruelty" and are sufficient for the jury to find that Morton acted with malice. **Yanoff**, 690 A.2d at 264.

Morton argues that his actions were "consistent" with involuntary manslaughter, in that he acted "recklessly or in a grossly negligent manner" in causing the death of Mangan, 18 Pa C.S. § 2504(a). **See** Morton's Brief at 16-19.

The jury **was** charged on the elements of involuntary manslaughter but returned a verdict of murder in the third degree. Their verdict is supported by the evidence presented at trial that Morton's actions were more than grossly negligent or reckless. **See Commonwealth v. Jacoby**, 170 A.3d 1065, 1078 (Pa. 2017) ("As the ultimate finder of fact, the jury was free to believe some, all, or none of the Commonwealth's evidence. The jury also was free to resolve any inconsistencies or discrepancies in the testimony in either party's favor."). Based on the foregoing, Morton is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2018