**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER RAMERIZ | : | |
| | : | |
| Appellant | : | No. 1329 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 18, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003837-2018

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:        **FILED: JUNE 14, 2021**

Alexander Rameriz ("Rameriz") appeals from the judgment of sentence imposed following his convictions of simple assault, unlawful restraint, false imprisonment, and harassment.[1]  Additionally, Rameriz's counsel, Matthew P. Kelly, Esquire ("Attorney Kelly"), has filed an Application to Withdraw as Counsel, and a brief pursuant to ***Anders v. California***, 368 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We grant Attorney Kelly's Application to Withdraw, and affirm Rameriz's judgment of sentence.

On July 19, 2018, at approximately 6:30 p.m., Gregory Thompson ("Thompson"), met an associate named "Rich," later identified as Richard

---

[1] 18 Pa.C.S.A. §§ 2701(a)(3), 2902(a)(1), 2903(a), 2709(a)(1).

Kasperitis ("Kasperitis"), at 171 Charles Street, Wilkes-Barre, Pennsylvania. Shortly thereafter, Thompson and Kasperitis went inside the residence to a bedroom. There were multiple people inside the home and in the bedroom. Kasperitis left the bedroom for a short time before returning with a man he introduced as "Country," later identified as Rameriz.

Rameriz accused Thompson of owing him $200. Thompson claimed that he had not previously met Rameriz, and did not owe him money. Rameriz and an unidentified man took Thompson to the back room of the house, emptied Thompson's pockets, took his ATM card, and demanded that Thompson give them money. Rameriz tied Thompson's hands together with plastic zip ties, and a neck tie. Rameriz and the unidentified man then beat Thompson. At some point, they pulled out a gun and began hitting Thompson in the head with the firearm. Thompson was kept at the home the entire night, and was punched in the head and kicked in the ribs several times throughout the night. Rameriz also ordered two men to stand at the exits to the home throughout the night, preventing Thompson from leaving.

Sometime between 7:00 and 8:00 a.m. on July 20, 2018, Thompson told Rameriz that Thompson could withdraw funds from his bank account. Thompson told Rameriz where his bank was located, after which Rameriz ordered an unidentified individual to take Thompson to the bank. Subsequently, Thompson, Kasperitis, and an unidentified driver, went to Thompson's bank. Upon their arrival, the unidentified driver remained in the

vehicle, while Kasperitis stood outside of the bank, by the door. Thompson entered the bank and told the bank teller that he did not have an account at the bank, but he had been held captive by numerous men, including the two outside, the entire night. The bank's branch manager, Sandra Wheeler ("Wheeler"), ordered another employee to lock the bank doors while both Wheeler and a customer service representative called 911.

Police Officer Christopher Benson ("Officer Benson"), of the Wilkes-Barre Police Department, responded to the 911 call and interviewed Thompson. Thereafter, Officer Benson and other police officers located the unidentified driver[2] and Kasperitis. Kasperitis, who was found hiding in a rack of clothes in a nearby store, was taken into custody.

Kasperitis confirmed what Thompson had told police. Thereafter, Officer Benson proceeded to the home on Charles Street, without a warrant, to complete a "knock and talk." A tenant of the Charles Street home allowed Officer Benson to enter, and Officer Benson found Rameriz in the back room of the home. Rameriz claimed that his name was not "Country," but that he was known as "Big Head." Subsequently, Officer Benson found various narcotics in the home, after which some individuals within the home were

---

[2] The driver was determined to be an unknowing accomplice and was later released.

arrested for drug-related offenses and outstanding warrants. Officer Benson later returned to police headquarters, where he again interviewed Kasperitis.[3]

On July 23, 2018, Thompson came to the Wilkes-Barre police headquarters and identified Rameriz from a photo array. The next day, the Commonwealth charged Rameriz with, *inter alia*, the above-mentioned offenses.

On January 8, 2020, following a two-day jury trial, Rameriz was convicted of the above-mentioned offenses. The trial court deferred sentencing for the preparation of a pre-sentence investigation report ("PSI").

Due to the Covid-19 Pandemic, Rameriz's sentencing was rescheduled multiple times. On August 18, 2020, the trial court sentenced Rameriz to concurrent prison terms of 12 to 24 months for his conviction of simple assault, and 6 to 12 months for his conviction of false imprisonment. The trial court also imposed a consecutive prison term of 15 to 36 months for Rameriz's conviction of unlawful restraint. Rameriz's conviction for harassment merged for sentencing purposes. Thus, the trial court sentenced Rameriz to an aggregate term of 27 to 60 months in prison. Rameriz was also credited with 586 days of time served.

On August 21, 2020, Rameriz filed a Post-Sentence Motion requesting, *inter alia*, an additional 139 days pre-trial credit for time served. On October

---

[3] Kasperitis died at some point during the police investigation, and prior to trial.

5, 2020, the trial court granted Rameriz's Post-Sentence Motion with respect to his credit for time served, adding credit for an additional 120 days, resulting in an aggregate 706 days of credit for time served.

Rameriz filed a timely Notice of Appeal[4] and court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. Additionally, Rameriz's trial counsel, John Pike, Esquire, requested to withdraw from representation, and that conflict counsel be appointed for Rameriz's appeal. Attorney Kelly, who was appointed to represent Rameriz, subsequently filed with this Court an Application to Withdraw as Counsel, and a brief pursuant to **Anders**. Rameriz filed a *pro se* Application for Relief, in which he requested leave to file a *pro se* response to Attorney Kelly's **Anders** Brief. This Court granted Rameriz's Application for Relief, and he subsequently filed a "*Pro Se* Response to **Ander**'*s* [*sic*] Brief."

When counsel files an **Anders** brief, and the appellant files a *pro se* or counseled response, this Court will first determine whether counsel has complied with the dictates of **Anders** and **Santiago**. **See Commonwealth v. Bennett**, 124 A.3d 327, 333 (Pa. Super. 2015) (outlining the proper procedure where counsel files an **Anders** brief and the appellant files a *pro se* response). If counsel has complied with the dictates of **Anders** and

---

[4] Rameriz purports to appeal from the jury verdict rendered on January 8, 2020. However, "in criminal cases appeals lie from the judgment of sentence, rather than from the verdict of guilt." **Commonwealth v. Charles O'Neill**, 578 A.2d 1334, 1335 (Pa. Super. 1990).

*Santiago*, we will address the issues raised in the *Anders* brief, and conduct our independent examination of the record as to those issues. *See id.* Finally, if we determine those issues to be without merit, we next examine the appellant's *pro se* allegations. *See id.* As to appellant's *pro se* allegations, when an advocate's brief has been filed, "[this] Court is limited to examining only those issues raised and developed in the brief[; w]e do not act as, and are forbidden from acting as, appellant's counsel." *Id.*

Pursuant to *Anders*, when counsel believes that an appeal is frivolous and wishes to withdraw from representation, he or she must

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to [the] defendant and advise him or his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention. The determination of whether the appeal is frivolous remains with the court.

*Commonwealth v. Burwell*, 42 A.3d 1077, 1083 (Pa. Super. 2012) (citation omitted).

Additionally, our Supreme Court has explained that a proper *Anders* brief must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Instantly, our review of the *Anders* Brief and the Application to Withdraw confirms that Attorney Kelly has substantially complied with each of the technical requirements of *Anders* and *Santiago*. *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007) (stating that counsel must substantially comply with the requirements of *Anders*). Attorney Kelly indicates that he has made a conscientious examination of the record and determined that an appeal would be frivolous. *See Anders* Brief at 7. The record further reflects that Attorney Kelly has furnished a copy of the *Anders* Brief to Rameriz, and advised Rameriz of his right to retain new counsel or proceed *pro se*, or raise any additional points that he deems worthy of this Court's attention. Additionally, the *Anders* Brief substantially complies with the requirements of *Santiago*. As Attorney Kelly has complied with all of the requirements for withdrawing from representation, we will examine the record and make an independent determination of whether Rameriz's appeal is, in fact, wholly frivolous.

In the *Anders* Brief, Attorney Kelly presents the following issue for our review: "Whether the trial court abused its discretion in sentencing [Rameriz?]" *Anders* Brief at 1.

Rameriz claims that the trial court abused its discretion in failing to impose concurrent sentences on all charges. *Id.* at 6.

Rameriz's claim challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Sunealitis*, 153 A.3d 414, 420 (Pa. Super. 2016). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentencing appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b)

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Ramirez filed a timely Notice of Appeal. However, as Attorney Kelly notes in the *Anders* Brief, Rameriz did not raise this claim in his Post-Sentence Motion or at sentencing; rather he challenged the trial court's credit for time-served calculation. *See Anders* Brief at 7. Additionally, as noted by the trial court in its Opinion, Rameriz did not preserve this claim in his Pa.R.A.P. 1925(b) Concise Statement. *See* Trial Court Opinion, 1/13/21, at 6-11. Accordingly, Rameriz's claim has not been preserved for our review. *See Moury*, *supra*.

Moreover, based upon our independent review of the record, even if Rameriz had preserved this claim for review, we would conclude that it lacks merit. As the trial court stated in its Opinion, the trial court reviewed Rameriz's PSI, and imposed a sentence within the standard range of the sentencing guidelines. *See* Trial Court Opinion, 1/13/21, at 10; *see also Moury*, 992 A.2d at 171 (stating that where a sentence is within the standard range of the sentencing guidelines, Pennsylvania law presumes the sentence is appropriate under the Sentencing Code); *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (explaining that where a sentencing court considered the PSI, it is presumed that they are "aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."); *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (stating that, "[g]enerally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively'") (citation omitted). Accordingly, Rameriz's claim lacks merit.

We now turn to Rameriz's issues, raised in his *Pro Se* Response. Rameriz raises the following claims for our review:

> 1) [] Th[o]mpson inconsistency on the identification on transcripts [*sic*] from the preliminary hearing pg 24 line 8 to 15 now if you look at the transcripts from the trial pg 18 line 11 to 25 in if you to pg 19 line 15 to 24 in pg 19 line 5 to 11 pg 20 line[ ]7 to 10 pg 20 line 13 to 17. [*sic*]
>
> 2) [] Th[o]mpson inconsistency in his statements from the preliminary hearing to his trial statements inconsistency. [*sic*]

3) [] Wheeler is not in any discovery or any interviews or statements[.]

4) Officer Benson inconsistency on the affidavit[,] [*sic*] like the time in [*sic*] date that [] Thompson came in for the photo array for example on the photo array haves [*sic*] a time and date that stated July 23[,] 2018 at 2:05 [p.m.] but Officer Benson states on the affidavit that [] Tho[m]pson came in on July[ ]24[,] 2018[ ]at 1440 hours.

*Pro Se* Response to **Ander***'s* [*sic*] Brief at 1 (some capitalization omitted).

Rameriz's entire *Pro Se* Response is one page in length and does not advance any additional argument, nor does he cite to relevant legal authority, or request any relief. ***See id.*** Accordingly, we conclude that Rameriz has waived these claims. ***See Bennett***, ***supra***; ***see also Commonwealth v. Rivera***, 685 A.2d 1011, 1013 (Pa. Super. 1996) (stating that this Court will not review a wholly inadequate brief that fails to comply with the guidelines set forth in Pa.R.A.P. 2111(a)); Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent.").

Application to Withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/14/2021

- 10 -