2017 PA Super 2

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NORMA JEAN HOLMES | |
| Appellant | No. 305 MDA 2014 |

Appeal from the Order Entered January 21, 2014
In the Court of Common Pleas of 39th District
Fulton County Branch
Criminal Division at No: CP-29-CR-0000103-2012

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN,
LAZARUS, MUNDY, OLSON, OTT, and STABILE, JJ.

OPINION IN SUPPORT OF AFFIRMANCE BY STABILE, J.:**FILED JANUARY 04, 2017**

Appellant Norma Jean Holmes appeals from the order entered January 21, 2014 in the Court of Common Pleas of the 39th Judicial District, Fulton County Branch ("trial court"), affirming a prior order denying Appellant's request to modify the amount of restitution imposed at sentencing. Appellant entered a plea of *nolo contendere* to one count of recklessly endangering another person ("REAP") in connection with the death of the victim, Bryan S. Nave.  The trial court ordered Appellant to pay restitution to the victim's parents, Joseph and Laura Nave, in the amount of $12,794.50, for the victim's funeral expenses.  Upon review, we affirm in part and vacate in part.

The facts and procedural history underlying this case are not in dispute.  In the early morning hours of November 20, 2011, Appellant and

the victim left the Log Cabin Bar in Hancock, Maryland. The victim was driving Appellant's vehicle, with her permission. Both the victim and Appellant had been drinking heavily that night. They were returning home to Greencastle, Pennsylvania, when the victim lost control of the vehicle on State Route 70, westbound. The victim was killed in the single-vehicle accident; Appellant, who was asleep in the passenger seat, survived the crash.

Appellant was charged with one count of REAP[1] and two summary counts of Permitting Violation of Title.[2] On October 9, 2012, Appellant pled *nolo contendere* to the charge of REAP and the Commonwealth *nolle prossed* the remaining charges. Appellant appeared for sentencing on November 5, 2012, before the Honorable Douglas W. Herman. At sentencing, defense counsel remarked that there was no agreement as to restitution. N.T., Hearing, 11/5/12, at 5. The trial court stated, "[b]ut we will put the amounts in the restitution order, and that's the starting point for it and then, Mr. Keller, I think the procedure is for you to request a hearing at some point." *Id.* The trial court imposed a sentence of two years' probation, plus costs and restitution:

> You're placed on probation for a period of 24 months, pay the court costs, pay $200 to the Fulton County Law Library. You'll

---

[1] 18 Pa.C.S.A. § 2705.

[2] 75 Pa.C.S.A. § 1575(a) (permitting reckless driving and permitting unlicensed operation).

- 2 -

undergo a drug and alcohol assessment and following any recommendations for treatment, 50 hours of community service. You may not consume alcohol or any controlled substance and you'll [be] subject to random testing to insure compliance with that condition. You'll pay the restitution as determined by the district attorney and, of course, there's an issue with that that the courts with [sic] deal with at some point, and finally you have a supervision fee of $25 per month to defray the cost of the supervision that the court has ordered in this case.

*Id.* at 9-10.

The November 6, 2012 sentencing order, under "Financials," provided that Appellant shall pay all court costs, a $25 per month supervision fee, and restitution as determined by the district attorney in the amount of $12,794.50[3] to the victim's parents, Joseph and Laura Nave. (Docket #21.) On July 31, 2013, Appellant filed a "motion for restitution hearing," arguing that restitution was improper where the victim's death was caused by his own criminal conduct of driving under the influence of alcohol. The Commonwealth filed an answer on August 14, 2013, responding that Appellant's recklessness in allowing the victim to drive her car caused the victim's death, and that the victim's parents, as his personal representatives, stand in his shoes as victims pursuant to 18 Pa.C.S.A. § 1106(h).[4] (Docket #19.)

_____

[3] This amount represented a funeral bill of $11,134.00 and a monument bill of $1,660.50.

[4] In this case, there was no estate raised for Bryan Nave. The record indicates that the victim's parents paid for his funeral expenses out-of-pocket.

- 3 -

On September 16, 2013, the parties filed a "stipulation of facts in lieu of hearing," which set forth the operative facts as follows:

1.  [Appellant] Norma Jean Holmes and Bryan S. Nave, sui juris adults, agreed that he would pick her up at her home in Greencastle, Pennsylvania on November 19, 2011 to go together to the Log Cabin in Hancock, Maryland.

2.  Mr. Nave drove his vehicle to Greencastle, where it became inoperable and [Appellant] allowed him thereafter to drive her car. Both Mr. Nave and [Appellant] consumed alcoholic beverages on the night of November 19, 2011/early morning of November 20, 2011. The attached handwritten statement of [Appellant] on Pennsylvania State Police Victim/Witness Statement Form, dated 12/21/11 and the attached two page handwritten statement of [Appellant] on Pennsylvania State Police Noncustodial Written Statement Form dated 12/21/11 may be considered as her testimony.

3.  After they got into her vehicle at the Log Cabin, [Appellant] fell asleep and Mr. Nave apparently drove westbound on SR 70 instead of eastbound which would have taken him in the direction of Greencastle.

4.  Mr. Nave crashed the vehicle along the left lane of SR 70 westbound and died as a result of his injuries, while [Appellant] suffered bodily injury which resulted in her transport to and treatment in Conemaugh Hospital in Johnstown, Pennsylvania.

5.  The claim for restitution[,] set forth by the Commonwealth at sentencing, is in keeping with the letter by Fulton County Victim Services Coordinator Carolyn Kerlin, which is attached hereto.

"Stipulation of facts in lieu of hearing," 9/16/13 at 1-2; Docket #17 (reformatted for ease of reading).

Appellant's statements to police, attached to the stipulation of facts, are as follows:

Bryan Nave asked me out. After convincing me (was opposed because of his age) I finally agreed to go with him (Bryan) to the Log Cabin in Hancock, MD. I told Bryan the only stipulation was he (Bryan) had to pick me up at home. Bryan said "no problem!" Bryan arrived approx. 8:10-8:15 [p.m.] on 11-19-11. I had to stop at my local Legion to let a friend know I wouldn't be there that evening, that my plans changed! Bryan and I went to [Greencastle] Legion for one drink. Bryan and I left [the] Legion and went to [the] gas station. Got gas, Bryan wanted liquor for [the] ride to [the] Log Cabin so I directed Bryan to [the] liquor store. Bryan and I left [the] liquor store and headed to [the] Log Cabin. Bryan and I drank, talked, and danced that evening. I was tired so I asked Bryan if Bryan was ready to leave (approx. 1 AM 11-20-11). Bryan said yes. Bryan and I got into my car (Bryan still driving). I layed [sic] my seat back and went to sleep. I woke up after [the] accident. I found my way out of my car, flagged down help. I remember being in and out of [sic]. I briefly remember [the] ride in [the] ambulance. I remember hearing [the] rotors of [the] helicopter and then woke up in [the] hospital when they were cutting my clothes off. I found out that after noon that Bryan didn't make it.

Pennsylvania State Police Victim/Witness Statement Form, 12/21/11 at 1.

Bryan Nave met [Appellant] and went to Greencastle Legion. He had (1) beer believes Budweiser. Bryan drove [Appellant's] car to Sheetz in Greencastle. He then drove the car to [the] liquor store. He bought a pt. of Cpt. Morgan. [Appellant] made Bryan and herself a mixed drink in the car. They then went to the Log Cabin in Hancock. Bryan bought all the drinks that night. He drank approx. 10+ drinks. [Appellant] thinks she drank 6-7 mixed drinks. [Appellant] told Bryan that she don't [sic] drink and drive because she has a CDL [(Commercial Driver's License)] and she don't [sic] want to lose them. Bryan drank (3) straight shots of whiskey back to back. [Appellant] related she believes they left [the] bar around 0100 hours due to the time of the accident. [Appellant] related she got into the passenger seat and went to sleep.

Pennsylvania State Police Noncustodial Written Statement, 12/21/11 at 2.

In a letter dated October 26, 2012, Carolyn Kerlin, Victim Services

Coordinator, opined that Appellant's actions of permitting the victim to drive

her vehicle knowing that he had consumed at least ten drinks caused the victim's death and that Appellant should be required to make restitution to the victim's parents for funeral expenses. However, Ms. Kerlin acknowledged that if a victim's compensation claim were filed, it would likely be viewed as a DUI case for purposes of determining the victim's eligibility for compensation: "If the victim was driving, or the evidence seems to support that he was, then the claim would be denied since he was driving a vehicle while intoxicated, which is against the law and directly caused his death."

By order entered October 29, 2013, the trial court denied Appellant's request to modify the restitution award. (Docket #14.) The trial court found that restitution was appropriate both as a condition of Appellant's probation under 42 Pa.C.S.A. § 9754(c)(8) of the Sentencing Code, and as part of her sentence under 18 Pa.C.S.A. § 1106(a) of the Crimes Code, which provides for mandatory restitution where a defendant's actions directly resulted in personal injury to the victim:

> In light of these two standards for imposing restitution, we believe that both have been satisfied. In regards to the "direct causation" standard, we find that the reckless endangerment of Bryan Nave directly resulted in his death. Therefore, the funeral costs which were imposed as restitution were the direct result of [Appellant's] engaging in reckless conduct which placed Mr. Nave in danger of death. Additionally, a sentence of probation was imposed. Even if the sentence of probation did not rise to the level of direct causation, the restitution would easily fall under the standard of restitution as a condition of [Appellant's] probation.

Order, 10/29/13 at 2.

On November 21, 2013, Appellant filed an application for reconsideration, arguing that the record did not support a finding that restitution was ordered as a condition of probation. Even if it had been, Appellant argued, the trial court failed to inquire into Appellant's ability to pay, as required by 42 Pa.C.S.A. § 9754. According to Appellant, restitution was imposed under 18 Pa.C.S.A. § 1106(a), which is improper when the victim's injuries are an indirect, rather than direct, result of the defendant's criminal actions. Appellant contended that her actions were not the sole or direct cause of the victim's death, where he was driving under the influence of alcohol at the time of the fatal accident. Furthermore, Appellant argued that even if restitution was appropriate under 18 Pa.C.S.A. § 1106(a), the trial court was required to apportion damages where Appellant's actions were not the sole cause of the victim's injuries. (Docket #13.)

On November 22, 2013, Appellant filed a notice of appeal from the trial court's October 29, 2013 order denying Appellant's request to modify restitution. (Docket #12.) On November 26, 2013, the trial court granted Appellant's application for reconsideration and ordered that all appeal proceedings be stayed pending reconsideration of its October 29, 2013 order. (Docket #11.) On January 21, 2014, following receipt of the Commonwealth's response, Appellant's application for reconsideration was denied. (Docket #8.) In its January 21, 2014 order, the trial court reiterated that the record fully supported restitution under 18 Pa.C.S.A.

§ 1106(a); however, the trial court stated that restitution was imposed as a condition of Appellant's probation under 42 Pa.C.S.A. § 9754.

> [Appellant] argues that the [c]ourt's sentencing Order of November 6, 2012 did not make restitution a condition of probation. The Commonwealth appears to support this contention, however, the [c]ourt strongly disagrees with both the Commonwealth and [Appellant]. After review of the Order of November 6, 2012, we conclude that Order specifically calls for a 24 month sentence of probation and language requiring [Appellant] to pay restitution in the amount of $12,794.50 to Joseph and Laura Nave. It is of no consequence that the directive to pay restitution did [not] fit into the special conditions section of the formatted sentencing order. The Order clearly directs restitution as a condition of probation.

Order, 1/21/14 at 2, ¶4. In addition, the trial court opined that Appellant's ability to pay can be assessed at any time, by the court *sua sponte*, or on Appellant's own motion. *Id.* at 3, ¶ 5. The trial court also found this issue to be waived, as it was not raised previously. *Id.* The trial court advised Appellant that she had 30 days to appeal the ruling.

Appellant filed a notice of appeal on February 18, 2014. (Docket #7.) On February 25, 2014, Appellant was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b); Appellant complied on March 17, 2014, and on April 28, 2014, the trial court filed a Rule 1925(a) opinion. The trial court opined that restitution was appropriate under 18 Pa.C.S.A. § 1106(a) because the loss was the direct result of Appellant's criminal actions. Trial Court Opinion, 4/28/14 at 3. The trial court stated that "[a]s a direct result of [Appellant's] conscious disregard of the known risk of death or great bodily harm caused

by driving while under the influence, the victim died." *Id.* The trial court also found that the victim's conduct in driving while under the influence of alcohol was not an intervening cause of his death. *Id.* However, the trial court insisted that, "[f]rom the sentencing hearing of November 5, 2012, it is clear that restitution was a condition of probation." *Id.* at 5. The trial court observed that when restitution is imposed as a condition of probation, rather than as a direct sentence under the Crimes Code, an indirect connection between the criminal activity and the victim's loss is sufficient. *Id.* at 4-5 (citing *Commonwealth v. Harriott*, 919 A.2d 234, 238 (Pa. Super. 2007), *appeal denied*, 934 A.2d 72 (Pa. 2007)). With regard to Appellant's ability to pay, the trial court determined that a defendant's ability to pay costs, fines, or restitution does not need to be assessed prior to sentencing.

> The court only needs to assess a defendant's ability to pay costs, fines, or restitution in the event that the defendant will be confined for failure to pay said costs, fines, or restitution. Because [Appellant] is not in danger of confinement, there was no error when the Court did not address [Appellant's] ability to pay restitution.

*Id.* at 5 (citing *Commonwealth v. Childs*, 63 A.3d 323, 326 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013); Pa.R.Crim.P. 706).

Appellant raised the following issues on appeal:

1.  Did the court err by finding that restitution was imposed as a condition of probation and applying an indirect causation standard under 42 Pa.C.S. § 9754(c)(8) when the sentencing proceedings did not indicate that it was a condition of probation and the court did not make a

determination regarding what loss had been caused by [Appellant] and/or the amount [Appellant] could afford to pay?

2.  If restitution was ordered as a condition of probation, did the court err by failing to make a determination under 42 Pa.C.S. § 9754(c)(8) regarding the loss or damage caused by [Appellant] or assess [Appellant's] ability to pay restitution?

3.  Did the court err by finding that restitution was proper as a direct sentence under 18 Pa.C.S. § 1106 when the funeral and memorial costs for the victim, on which the restitution was based, were not the direct result of [Appellant's] reckless endangerment of the victim and [Appellant] was not held criminally liable for causing the accident in which the victim was killed?

4.  Did the court err when it failed to consider the extent of the victim's injury and the damage caused by [Appellant's] conduct and to apportion restitution when [Appellant's] actions were not the sole cause of the victim's injuries?

Appellant's Brief at 8-9.

This Court certified this case for *en banc* review to address the following issue: "Whether parents may be considered 'victims' for purposes of determining restitution under 18 Pa.C.S.A. § 1106(a)?" The parties have filed supplemental briefs addressing this issue.

Initially, we must address a procedural matter. Appellant was sentenced on November 5, 2012, but did not request modification of restitution until July 31, 2013, nearly nine months later. Ordinarily, of course, post-sentence motions must be filed no later than 10 days after imposition of sentence. Pa.R.Crim.P. 720(A)(1). However, a motion requesting modification of restitution is not considered a typical

post-sentence motion subject to timeliness constraints. **See Commonwealth v. Stradley**, 50 A.3d 769, 772 (Pa. Super. 2012) (citing 18 Pa.C.S.A. § 1106(c)(3) (a defendant may seek a modification or amendment of the restitution order at any time directly from the trial court)).

Following the trial court's October 29, 2013 denial of modification, Appellant filed a motion for reconsideration on November 21, 2013, 23 days later. It is unclear whether the November 21 filing was timely, as it would not appear to fall under Pa.R.Crim.P. 720. Appellant also filed a notice of appeal from the October 29, 2013 order on November 22, 2013. The trial court granted reconsideration on November 26, 2013, within 30 days of the October 29, 2013 order, apparently for purposes of permitting the Commonwealth to file an answer. 42 Pa.C.S.A. § 5505 ("a court upon notice to the parties may modify or rescind any order within 30 days after its entry . . . if no appeal from such an order has been taken or allowed."); **PNC Bank, N.A. v. Unknown Heirs**, 929 A.2d 219, 226 (Pa. Super. 2007) ("Under section 5505, the trial court has broad discretion to modify or rescind an order, and this power may be exercised *sua sponte* or invoked pursuant to a party's motion for reconsideration.") (citation omitted); Pa.R.A.P. 1701 (tolling the time for taking an appeal only when the court files "an order expressly granting reconsideration . . . within the time prescribed by these rules for the filing of a notice of appeal."). The trial court also ordered that the appeal be stayed pending reconsideration. The

November 22, 2013 appeal was later stricken pursuant to Pa.R.A.P. 1701 ("A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order.").

On January 24, 2014, the trial court denied reconsideration and informed Appellant of her rights pursuant to Pa.R.Crim.P. 720 and Pa.R.A.P. 903(a), including that she had 30 days to file a timely appeal. ***See Schoff v. Richter***, 562 A.2d 912, 913 (Pa. Super. 1989) (citing Pa.R.A.P. 1701(b)(3)(ii) (where the court expressly grants reconsideration within 30 days, the time for filing a notice of appeal begins to run anew after entry of the decision on reconsideration, regardless of whether or not the court's decision amounts to a reaffirmation of its prior determination)). Thus, Appellant timely appealed to this Court.

We now proceed to the issues raised on appeal. First, we consider whether restitution was proper under Section 1106(a) of the Crimes Code. Initially, we note that

> [i]n the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

[]***Stradley***, 50 A.3d [at] 771-72 . . . (citations and quotation marks omitted); ***see also id.*** (stating that because "[the appellant's] claim on appeal challenges the legality of his sentence, its review is not abrogated by the entry of his guilty plea.").

***Commonwealth v. Kinnan***, 71 A.3d 983, 986 (Pa. Super. 2013).

> Restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of his sentence. ***Commonwealth v. Harner***, 533 Pa. 14, 617 A.2d 702, 704 (1992). Where that statutory authority exists, however, the imposition of restitution is vested within the sound discretion of the sentencing judge. ***Commonwealth v. Keenan***, 853 A.2d 381, 383 (Pa. Super. 2004); ***see also id.*** (stating that "[t]he primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's personal injury and that it is his responsibility to repair the injury as far as possible.").

***Id.*** "The court is required to specify the amount of restitution at sentencing, but may modify its order at any time provided that it states its reasons for any modification on the record." ***Commonwealth v. Solomon***, 25 A.3d 380, 389-390 (Pa. Super. 2011), *appeal denied*, 40 A.3d 1236 (Pa. 2012) (citing ***Commonwealth v. Dietrich***, 970 A.2d 1131, 1135 (Pa. 2009)).

> In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa.C.S. § 1106(a), or as a condition of probation, 42 Pa.C.S. § 9754. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. ***See*** 18 Pa.C.S.A. § 1106(a); ***Harner***, 533 Pa. at 21, 617 A.2d at 704. However, when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim. ***Harner***, 533 Pa. at 21-22, 617 A.2d at 706. As this Court stated in ***Harner***:
>
> > Such sentences are encouraged and give the trial court the flexibility to determine all the direct and

indirect damages caused by a defendant and then permit the court to order restitution so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way.

*Harner*, 533 Pa. at 22, 617 A.2d at 707; *see also Commonwealth v. Walton*, 483 Pa. 588, 599, 397 A.2d 1179, 1185 (1979). Thus, the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation. *See Harner*, 533 Pa. at 22-23 & n. 3, 617 A.2d at 707 & n. 3; *see also* 42 Pa.C.S. § 9754(c)(8).

*In re M.W.*, 725 A.2d 729, 732 (Pa. 1999) (footnotes omitted).

Section 1106 of the Crimes Code provides in relevant part:

**(a) General rule.**--Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

**(b) Condition of probation or parole.**--Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

**(c) Mandatory restitution.**--

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the

board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to

such other schedule as it deems just.

(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

**(h) Definitions.**--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Crime."**   Any offense punishable under this title or by a magisterial district judge.

**"Injury to property."**   Loss of real or personal property, including negotiable instruments, or decrease in its value, directly resulting from the crime.

**"Offender."**   Any person who has been found guilty of any crime.

**"Personal injury."**   Actual bodily harm, including pregnancy, directly resulting from the crime.

**"Property."**   Any real or personal property, including currency and negotiable instruments, of the victim.

**"Restitution."**   The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

**"Victim."**   As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.[FN:1]   The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance

company that has compensated the victim for loss under an insurance contract.

[FN:1] 71 P.S. § 180-9.1.

18 Pa.C.S.A. § 1106(a)-(c), (h).

As noted in subsection (h) above, the term "**Victim**" is defined as provided under Section 479.1 of the Administrative Code of 1929. Section 479.1, however, was repealed in 1998 by Act 111,[5] the Crime Victims Act ("CVA"). Prior to its repeal, Section 479.1 defined "victim" as:

(1) A person against whom a crime is being or has been perpetrated or attempted.

(2) A parent or legal guardian of a child so victimized, except when the parent or legal guardian of the child is the alleged offender.

(3) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act.

*See Commonwealth. v. Colon*, 708 A.2d 1279 (Pa. Super. 1998). Section 5102 of the CVA (Act 111), 18 P.S. § 11.5102, provides that the "act is a codification of the statutory provisions repealed in [S]ection 5103 and, except where clearly different from current law, **shall be deemed to be a continuation of prior law**." (Emphasis added). Section 5103[6] of the CVA

---

[5] Act of November 24, 1998, P.L. 882, No. 111, § 5103.

[6] The text of Section 5103 does not appear in Purdon's Pennsylvania Statutes. Resort must be made to the text of the public law, Act No. 1998-111, for the text of this statute that identifies section 479.1 as one of the statutes repealed at the time Act 111 was enacted.

repealed, *inter alia*, Section 479.1 of the Administrative Code of 1929.  Thus, at the time Section 479.1 was repealed, the legislature concomitantly enacted Section 5102, which, as stated, continued all consistent provisions of the prior law.  This legislative provision is also in accord with Section 1962 of the Statutory Construction Act, 1 Pa.C.S.A. § 1962, that provides, "[w]henever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, **the earlier statute shall be construed as continued in active operation**."  (Emphasis added).

Act 111, passed in 1998, deemed by Section 5102 to be a continuation of the consistent provisions of the prior law, including Section 479.1, is the current CVA.  "**Victim**" under the CVA is defined as:

(1)  A direct victim.

(2)  A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3)  A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

   Chapter 25 (relating to criminal homicide).

   Section 2702 (relating to aggravated assault).

   Section 3121 (relating to rape).

(4)  A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive

communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103. A comparison of the "victim" definitions under the now-repealed Section 479.1 and the current CVA reveals that they are consistent with each other and that the current CVA includes the same or substantially the same terms for the definition of "victim" as previously contained under Section 479.1. Therefore, as a matter of law and statutory construction, the current definition of "victim" under the CVA is, as intended, a part of the definition of "victim" under Section 1106(h). Having resolved what definitions apply to the term "victim" under Section 1106, the question as to whether the parents here are victims for purposes of ordering restitution under Section 1106(a) can now be addressed.

Section 1106(h) by incorporation of the CVA, defines a "victim", in part, as "[a] parent or legal guardian of a child who was a direct victim. . . ." 18 Pa.C.S.A. § 11.103. There is no dispute that the restitution ordered by the trial court was to compensate the parents of the victim, their child, in this case. Section 1106(a) provides "upon conviction for any crime . . . wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S.A. § 1106(a). Thus, we easily conclude that restitution under Section 1106(a) had to be ordered as a part of the sentence imposed upon Appellant to be paid to the parents of the

victim here.[7]   Construing Section 1106(a) in this manner not only is

consistent with the express incorporation by reference of the definitions

under Section 1106(h), but also is consistent with our obligation under

Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S.A. § 1921(a), to

construe statutes to effectuate the intention of the General Assembly.  It is

abundantly clear that the expressed intent behind Section 1106(a) is to fully

compensate *victims* for losses sustained as a *direct result of the actions* of a

criminal offender.  Moreover, this construction is consistent with those parts

_____

[7] It cannot be disputed that reference to a "child" under the definition of "victim" in the CVA applies equally to adult and minor children alike.  The term "child", as defined in Section 11.103 of the CVA, is not preceded by any qualifying adjectives.  This is not a mere oversight by the General Assembly, because a different provision in the same section of the CVA defines "victim" as "[a] **minor child** who is a material witness to any of the following crimes and offenses[.]"  18 P.S. § 11.103 (emphasis added).  Thus, the General Assembly clearly chose to qualify the term "child" with the adjective "minor" in one subsection of Section 11.103 of the CVA but not the other.  A presumption exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore, courts must give effect to every word.  **Commonwealth v. Ostrosky**, 909 A.2d 1224, 1232 (Pa. 2006).  Accordingly, the term "child" when it is not preceded by a qualifying adjective in Section 11.103 applies to both minors and adults.  **See** Pa.C.S.A. § 1922(2) ("the General Assembly intends the entire statute to be effective and certain.").  Additionally, construing the term "child" as not including adult children would be inconsistent with case law that has interpreted the term "child" to include parents of adult children who are victims.  **See, e.g., Commonwealth v. Yanoff**, 690 A.2d 260, 267 (Pa. Super. 1997) (approving restitution to a victim's parents for funeral expenses), **appeal denied**, 699 A.2d 735 (Pa. 1997).

of the CVA that may be read in *pari materia* with Section 1106,[8] expressly providing that victims should be restored through provision of restitution, and that any person who assumes the obligation to pay for the funeral or burial expenses as a direct result of a crime be compensated. **See** 18 P.S. §§ 11.201(6) and 11.701(a)(6).

The Opinion in Support of Reversal ("OISR") errs by focusing on that part of the CVA definition of "victim" that includes "a direct victim," as opposed to that part of the definition most applicable here that includes "a parent or legal guardian of a child who was a direct victim . . . ." The OISR reaches this position by transposing the adjective "direct" under Section 1106(a) from a modifier of an offender's criminal conduct to a modifier of the term "victim." The OISR concedes that it is abundantly clear from a literal reading of Section 1106 that the victim, for purposes of mandatory restitution, is a person "who suffered personal bodily injury as a **direct result of an offender's action**." OISR at 7 (emphasis added). Yet, the OISR then states the issue is whether under Section 1106(h) the definition

---

[8] In **Commonwealth v. Langston**, 904 A.2d 917 (Pa. Super. 2006), we pointed out that the CVA and Section 1106 are separate and distinct statutes with different purposes and definitions and are not interchangeable for purposes of defining recipients of restitution. We disagree with this characterization because it is an an overly broad generalization of the statutes. To the extent parts of the statutes relate to the same things, they are to be construed together as one statute, if possible. 1 Pa.C.S.A. § 1932. Both statutes express an intent that parents who have to pay for funeral expenses as a direct result of another's criminal actions are to be compensated.

of victim is broadened to include the parents here as "one who is not a **direct victim** of the offender's conduct." ***Id.*** (emphasis added). This subtle transposition by the OISR removes the statutory focus of "direct" from the *criminal action* that results in mandatory restitution and places the focus of the modifier "direct" upon the victim. Had the legislature intended only to compensate a "direct victim," it clearly could have done so. Instead, the legislature determined that several categories of victims, as defined under the CVA, should be compensated if their loss **directly results from criminal action**. Rather than focusing on the victim, restitution under Section 1106(a) applies where there has been a loss "that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable." ***Yanoff***, 690 A.2d at 266 (Pa. Super. 1997) (citing ***Commonwealth v. Harner***, 617 A.2d 702, 706 (Pa. 1992)). Restitution under Section 1106 for a loss suffered by a victim must be directly connected to the offender's criminal conduct, as opposed to only providing restitution to the victim himself as a "direct victim." It would make little sense given the purpose of this restitution statute to narrow the scope of victims to only "direct victims" as done by the OISR, when the purpose of this restitution statute is to be certain that an offender makes full restitution for all *direct losses resulting from his crime*. This purpose is not fulfilled by limiting mandatory restitution to only a "direct victim" when other persons defined as "victims" by the legislature, like the parents here, also suffer losses as a direct result of an offender's criminal action.

Furthermore, we reject Appellant's argument that restitution could not be ordered under Section 1106(a) because her conduct was not the direct cause of the victim's death. As stated, our Supreme Court has held that Section 1106(a) "applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable." **Harner**, 617 A.2d at 706. To determine the correct amount of restitution, a "but-for" test is used—damages which occur as a result of the crime are those which should not have occurred but for the defendant's criminal conduct. **Commonwealth v. Oree**, 911 A.2d 169, 174 (Pa. Super. 2006), *appeal denied*, 918 A.2d 744 (Pa. 2007). Thus, there must be a direct link between the crime and the requested damages for restitution to be ordered under Section 1106(a). **See Commonwealth v. Barger**, 956 A.2d 458, 465 (Pa. Super. 2008) (*en banc*), *appeal denied*, 980 A.2d 109 (Pa. 2009); **see also Commonwealth v. Harriott**, 919 A.2d 234, 238 (Pa. Super. 2007) (explaining that restitution ordered under Section 1106 is "proper only if there is a direct causal connection between the crime and the loss"), *appeal denied*, 934 A.2d 72 (Pa. 2007). As the undisputed facts in this case establish, Appellant pled guilty to REAP under Section 2705 of the Crimes Code in connection with the victim's death.

> We have held that a person is guilty of this crime when it is shown that the person (1) possessed "a *mens rea* recklessness," (2) committed a wrongful deed or guilty act ("*actus reus*"), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person. The element of "*mens*

*rea* recklessness" has been defined as a conscious disregard of a known risk of death or great bodily harm to another person. "Serious bodily injury" is defined as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. We have further held that Section 2705 was directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have had. Finally, the perpetrator must create an actual condition of danger, not merely an apprehension of danger.

**Commonwealth. v. Emler**, 903 A.2d 1273, 1278 (Pa. Super. 2006) (internal citations and quotation marks omitted). As the trial court found *sub judice*:

In the instant matter, [Appellant] recklessly endangered the victim by allowing the victim to drive [Appellant's] vehicle after [the victim had] consum[ed] numerous alcoholic beverages. Recklessness is defined as a conscious disregard of a known risk of death or great bodily harm to another person. Because [Appellant] knew that the victim had consumed numerous alcoholic beverages, she disregarded a known risk of death or great bodily harm to the victim by allowing him to drive while intoxicated. As a direct result of her conscious disregard of the known risk of death or great bodily harm caused by driving while under the influence, the victim died. Therefore, the loss in the instant matter, the funeral costs and expenses of the victim, were the direct result of [Appellant's] reckless endangerment of another person.

Trial Court Opinion, 4/28/14, at 3 (internal citations omitted). Based on the evidence of record, we discern no error in the trial court's imposition of restitution under Section 1106(a) because the victim's death was the direct result of Appellant's criminal conduct (REAP). Put differently, but for Appellant's criminal conduct of allowing the victim to drive her vehicle while under the influence of alcohol, the victim would not have died. **See Oree**,

*supra*. Accordingly, the trial court did not err to the extent it ordered restitution under Section 1106(a) for the victim's funeral costs and expenses paid by his parents.

The conclusion that the parents are entitled to restitution for funeral expenses directly resulting from the death of a son because of Appellant's criminal conduct in fact was settled prior to the repeal of Section 479.1 and the concomitant enactment of Act 111, the CVA, in 1998. In **Yanoff**, the trial court ordered the defendant to make restitution to the parents of the victim in the amount of $6,396.00 for funeral expenses incurred as a result of the defendant's conviction of third-degree murder and aggravated assault of their son. Restitution was ordered for funeral expenses because the parents' loss **flowed from the defendant's conduct for which he was held criminally accountable**. *Yanoff*, 690 A.2d at 266. At the time *Yanoff* was decided, restitution as a part of a sentence under Section 1106(a) was not mandatory as it is today. In 1998, the legislature amended the reference from "may" to "shall" to make restitution mandatory. The remainder of Section 1106(a) remained unchanged. Had this case been decided prior to the repeal of Section 479.1 in 1998, there is little doubt that precedent would have supported mandatory restitution to the parents in this case. The OISR reaches a different conclusion today based upon this Court's

decisions in **Opperman**[9] and **Langston** that viewed the repeal of Section 479.1 as eliminating the definition of "victim" under the CVA from Section 1106.

**Opperman** reached the conclusion that the definition of "victim" as provided for under Section 479.1 of the Administrative Code of 1929 no longer exists because the legislature failed to continue to incorporate that definition under Section 1106 when it was amended in 1998.[10]  This was in error.  The **Opperman** Court explained:

> As we have previously indicated, the references to The Administrative Code were accompanied by footnotes, which refer the reader to 71 P.S. § 180-9.1.  This section, which contains The Administrative Code § 479.1, defines victim as "a person against whom a crime is being or has been perpetrated or attempted."  However, this section was repealed on November 24, 1998, effective immediately. 1998, Nov. 24, P.L. 882, No. 111, § 5103, imd. effective.  While we are cognizant of the fact that the subject matter of 71 P.S. 180-9.0 through 9.11 is now contained in the Crime Victims Act, 18 P.S. § 11.101 *et seq.*, this statute does not formally adopt, subsume or recodify the subject matter.  It is also persuasive that 18 Pa.C.S.A. § 1106 was amended on December 3, 1998 subsequent to the repeal of 71 P.S. 180-9.1 and yet continued to incorporate the definition of victim as found in the Administrative Code of 1929.  It would appear that since 18 Pa.C.S.A. § 1106 was amended after the effective date of the Crimes Victims Act and the repeal of the 71 P.S. § 180-9-9.11, the legislature had the opportunity to include the definition of victim as contained in the Crime Victims Act, if

---

[9] **Commonwealth v. Opperman**, 780 A.2d 714 (Pa. Super. 2001), **appeal denied**, 792 A.2d 1253 (Pa. 2001).

[10] Curiously, the OSIR relies upon the definitions under the CVA to reaffirm **Opperman** and **Langston** that expressly hold that the definitions under the CVA do not apply to Section 1106 of the Crimes Code.

they so chose. Having not done so, we are constrained to find that the definition of victim as provided for in The Administrative Code of 1929 no longer exists as the most recent statute incorporating that definition has been abolished.

*Id.* 780 A.2d at 718-719. ***Opperman***'s conclusion that the definition of "victim" under Section 479.1 of the Administrative Code of 1929 was no longer a part of Section 1106, was premised entirely upon the language of the historical and statutory notes in the repealer to Section 5103 of Act 111 that simply refers the reader for the subject matter of the repealed section to 18 P.S. § 11.101 *et seq.*, the CVA concomitantly enacted in 1998. For whatever reason, the ***Opperman*** Court failed to take notice of Section 5102 of the CVA, which as stated, provides that except where clearly different from current law, the statutory provisions repealed under Section 5103 shall be deemed to be a continuation of prior law. The repealed provisions under Section 5103 contained the definitions under Section 479.1 of the Administrative Code of 1929, which also as stated, contained the multi-part definition for the term "victim" that is the same or substantially the same as that contained in the CVA. Thus, ***Opperman*** was incorrectly decided due to its oversight of these important legislative provisions.

***Langston***, relying upon ***Opperman***'s holding that an insurance company that paid damages under insurance contracts held by a victim's mother did not qualify as a victim under Section 1106, concluded that a child victimized by a defendant in the tragic loss of his parents was not a victim for restitution purposes under Section 1106. ***Langston*** did not discuss, like

***Opperman***, the relationship between the definitions of "victim" under the CVA and Section 1106 as affected by the various repealer and enactment provisions discussed above. ***Langston*** instead simply relied upon the legal conclusion reached in ***Opperman***. Nonetheless, to the extent that ***Langston*** is dependent upon ***Opperman***'s legislative analysis, we conclude that ***Langston*** too was decided in error.

The OISR is mistaken insofar as it claims that our Supreme Court's citation to ***Langston*** in the recent case of ***Commonwealth v. Hall***, 80 A.3d 1204 (Pa. 2013), sufficiently lends support to the statutory interpretation question presently before us. In ***Langston***, this Court stated that the CVA and Section 1106 are two separate and distinct statutes with different purposes and definitions of who qualifies as a "victim," and are not interchangeable for purposes of defining recipients of restitution. ***Hall*** held that compensation paid under the CVA is made on the basis of claims filed by individual victims as determined by the Office of Victim Services rather than through court-ordered restitution by a defendant. The Supreme Court cited ***Langston*** in support of this statement and parenthetically summarized ***Langston***'s holding as above described. The Supreme Court's citation of ***Langston*** was in support of the point made that compensation and restitution are handled differently under the CVA and Section 1106. It did not decide the statutory interpretive question presently before us despite the Commonwealth's argument to the Court that the Superior Court's decision in ***Commonwealth v. Lebarre***, 961 A.2d 176 (Pa. Super. 2008), which found

that restitution was properly ordered to a child's estate under Section 1106, was at odds with the Superior Court's *en banc* decision in **Hall**. In refusing to address this alleged inconsistency, the Supreme Court stated:

> To properly decide this case, we need not resolve the question of the interplay, if any, between the Crime Victims Act and Section 1106 of the Crimes Code. As we have already determined, the plain meaning of Section 9754, which is actually at issue here, allows for a broader range of "victims" for purposes of fashioning probationary conditions.

**Hall**, 80 A.2d at n.5. Thus, as of 2013, the Supreme Court reserved decision on the interplay between Section 1106 and the CVA for purposes of defining "victims" under those statutes. In light of **Opperman**'s and **Langston**'s omission to recognize the effect of Section 5102 and to apply the "victim" definitions under the CVA to Section 1106, we conclude that **Opperman** and **Langston** were decided wrongly. Consequently, we hold that the definition of "victim" under the CVA is indeed applicable to Section 1106 of the Crimes Code. We, unlike the OSIR, therefore decline to reaffirm those decisions.

Because we find restitution had to be ordered under Section 1106(a), we need not reach the question as to whether the trial court erred in failing first to determine Appellant's ability to pay restitution under Section 9754 of the Sentencing Code, 42 Pa.C.S.A. § 9754, which permits restitution to be imposed as a condition of probation. If we were to reach this question, we would conclude that the trial court erred in ordering restitution as a condition

of probation under Section 9754 without first determining Appellant's ability to pay the restitution. ***See Harner***, ***infra***.

We also conclude that the trial court erred in ordering restitution under both Section 1106(a) of the Crimes Code and Section 9754(c)(8) of the Sentencing Code. When a victim suffers injury to person or property, a sentencing court is mandated under Section 1106(a) to enter an order of restitution. Restitution under Section 1106(a), as part of a sentence, is penal in character and is imposed for losses for which a defendant has been held criminally accountable. ***Harner***, 617 A.2d at 706. When restitution is issued under Section 1106(a), a sentencing court is obligated to order full restitution regardless of the current financial resources of a defendant. 18 Pa.C.S.A. § 1106(c)(1)(i). Once an order of restitution has been made as part of a defendant's sentence under Section 1106(a), it is enforceable until paid. 18 Pa.C.S.A. § 1106(c)(2)(ii); ***Commonwealth v. Griffiths***, 15 A.3d 73, 75 (Pa. Super. 2010).

In contrast, restitution may be ordered under Section 9754(c)(8) as a condition of probation. 42 Pa.C.S.A. § 9754(c)(8). When ordered as a condition of probation a court may order a defendant "[t]o make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby." ***Id.*** Unlike restitution under Section 1106(a) that serves a punitive purpose, restitution ordered as a condition of probation under Section 9754(c)(8) is primarily aimed at rehabilitating and integrating a defendant into society as a law-abiding

- 30 -

citizen and is deemed a constructive alternative to imprisonment. **Harner**, 617 A.2d at 706; **Hall**, **supra**. Additionally, a sentencing court, when ordering restitution under Section 9754(c)(8), also must determine what amount of restitution a defendant can afford to pay, and how the restitution is to be paid. **Harner**, 617 A.2d at 707. Unlike restitution under Section 1106(a), the obligation to pay restitution under Section 9754(c)(8), as a condition of probation, expires upon the end of the term of probation, even if the amount of restitution ordered has not been paid in full. **Commonwealth v. Karth**, 994 A.2d 606, 610 (Pa. Super. 2010).

When restitution is ordered under Section 1106(a), it is a part of an offender's sentence. A sentence of restitution is mandatory when there has been injury to person or property by an offender's criminal conduct. Restitution as a part of a sentence is not satisfied until paid in full, regardless of a defendant's financial resources. In contrast, ordering restitution as a condition of probation under Section 9754(c)(8) must be based upon an offender's ability to pay and also, as stated, is discharged upon the expiration of the term of probation regardless of whether the obligation has been paid in full. It is inconsistent to order restitution as a sentence, regardless of an ability to pay and without discharge until paid in full, and at the same time order restitution as a condition of probation where the ability to pay must be determined and the restitution obligation is discharged upon the expiration of the term of probation. If restitution must be ordered and paid in full under Section 1106(a), it cannot at the same

time also be a condition of probation that can be discharged upon completion of probation.

Restitution is a creature of statute. **Harner**, 617 A.2d at 704. It would be impermissible for this Court to interpret Sections 1106(a) and 9754(c)(8) in a manner that would create conflicts between these two statutory provisions. **See** 1 Pa.C.S.A. § 1921(a) (every statute to be construed to give effect to all its provisions); **see also** 1 Pa.C.S.A. § 1932(b) (statutes in *pari materia* to be construed together, if possible, as one statute). Simply put, if restitution must be ordered as part of a sentence under Section 1106(a), it cannot at the same time also be ordered merely as a condition under Section 9754(c)(8).[11] The trial court, therefore, erred in ordering restitution simultaneously under Section 1106 of the Crimes Code and Section 9754 of the Sentencing Code. Accordingly, we vacate the trial court's order as it relates to restitution under Section 9754(c)(8).

In sum, we affirm the trial court's order of restitution under Section 1106(a), and vacate the order to the extent it ordered restitution under Section 9754(c)(8).

---

[11] When restitution is ordered under Section 1106(a) and an offender has been placed on probation or parole, restitution also may be ordered as a condition of such probation or parole. 18 Pa.C.S.A. § 1106(b). This restitution, however, is still a condition of an offender's sentence as opposed to a condition of probation under Section 9754(c)(8).

Order affirmed in part and vacated in part. Jurisdiction relinquished.

Judge Bowes, Judge Shogan, and Judge Olson join this Opinion in Support of Affirmance.

President Judge Emeritus Ford Elliott files an Opinion in Support of Reversal in which President Judge Emeritus Bender, Judge Lazarus and Judge Ott join.

Judge Mundy did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2017