J-S32040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHEILA ANN CARTER :
:
Appellant : No. 680 MDA 2022

Appeal from the Judgment of Sentence Entered March 30, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000932-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.: **FILED: JANUARY 17, 2023**

Sheila Ann Carter appeals from the judgment of sentence, entered in the Court of Common Pleas of Schuylkill County, following her convictions of firearm and drug offenses. Carter's counsel, Michael J. Fiorillo, Esquire, has filed an application to withdraw as counsel and an accompanying **Anders**[1] brief. Upon review, we affirm Carter's judgment of sentence and grant Attorney Fiorillo's application to withdraw.

On May 1, 2019, police executed a search warrant at Carter's primary residence located at 1216 West Norwegian Street, Pottsville. Carter lives at that location, an apartment, with Steven Davis. N.T. Jury Trial, 2/12/20, at 38-39, 42. The building is a three-story structure, with Carter's apartment on

---

[1] **Anders v. California**, 368 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

the first floor. ***Id.*** The interior of the residence contained a dining/living room, a bathroom, a kitchen, and two bedrooms. ***Id.*** at 39. As police entered the home, they encountered Carter, William Walters, and Davis at the dining table. ***Id.*** at 42; ***see also id.*** at 111-14, 121 (Walters testifying that he was purchasing heroin from Carter as police entered). Walters had contacted Carter to purchase heroin, and, upon his arrival, he saw Carter pull heroin out of her black purse. ***Id.*** at 118-21. Walters testified that he was holding his money as police entered the home, and that he saw Carter throw the heroin. ***Id.*** at 114. Police ordered everybody onto the floor and, as Walters complied, the cash he was carrying scattered onto the floor of the room. ***Id.*** at 114, 118. Walters testified that, while Davis was present, he was not involved in the transaction.[2] ***Id.*** at 114. Walters also testified that he had been using heroin earlier that morning. ***Id.*** at 119-20.

The police searched the residence and found the following items[3] in the dining room: cash; a white substance later identified as fentanyl; needles; and a series of tote bags. ***Id.*** at 47-48, 52-56. The tote bags contained multiple jars of marijuana, an Arizona Iced Tea can with a false bottom containing more marijuana, various pills later identified as oxycodone, bags

---

[2] Walters was not charged in relation to the raid. ***Id.*** at 115. However, he testified that he had a pending parole violation at the time of his testimony. ***Id.*** Walters testified that he had not received a deal in exchange for his testimony. ***Id.*** at 115-16 (Walters testifying he hoped for future leniency).

[3] We note that most of these items were stipulated to by the parties. ***Id.*** at 124-136, 138-169. Due to the number of the items and the length of their respective description, we do not recount it all.

utilized in the packaging and sale of heroin and fentanyl, several digital scales, a knotted bag containing methamphetamine, a resealable bag containing methamphetamine, an orange pill later identified as amphetamine, and a taser. *Id.* at 53-63, 127, 132. They also recovered a Polarms shotgun, a Wolf .50 caliber inline muzzle-loader with scope, and shotgun shells. *Id.* at 63-66, 128. Trooper Matthew Hoke also recovered a black purse, which contained cash and a pink wallet with Carter's ID card. *Id.* at 85-90. In one of the bedrooms[4] the police recovered an "owe sheet,"[5] a Browning .270 rifle with scope, and a Mossberg 12-gauge shotgun. *Id.* at 51-52, 75-78, 128. In the other bedroom, police did not recover any weapons, drugs, or paraphernalia. *Id.* at 78-79.

Cassandra O'Doherty, Carter's daughter, testified that on April 30, 2019, Carter had purchased half a pound of methamphetamine from her for $3,000.00. *Id.* at 94-95. In the same transaction, O'Doherty fronted Carter twenty-five grams of heroin, and Carter indicated that she planned to sell some of the twenty-five grams and use the rest. *Id.* at 95-97. O'Doherty also testified that, at the time of her testimony, she had 60 pending drug charges and she had not received a deal from the Commonwealth in exchange

---

[4] The Commonwealth contended that this room was Carter's due to the feminine clothing found in the room such as dresses, and the lack of male clothing. *Id.* at 81-82.

[5] At trial, Trooper Kurt E. Montz testified that drug dealers track their sales, purchases, and debts through "owe sheets." *Id.* at 51-52. Trooper Montz also testified, on cross-examination, that he did not know who authored the owe sheet. *Id.* at 68-70.

for her cooperation in this case. *Id.* at 97-101 (O'Doherty stating she was testifying so she would receive future leniency and confirming that she had been released on bail).

Troy Greenawald, qualified as an expert in narcotics packaging and distribution, *see id.* at 184, testified that, in his expert opinion, Carter possessed the various narcotics with the intent to distribute. *See id.* at 185-94. In particular, Greenawald explained that the presence of numerous firearms, and the high quantity of drugs, packaging materials, scales, and other paraphernalia, were all indicative of drug dealing. *Id.* Greenawald estimated that the total wholesale value[6] of the drugs was $8,000.00, and the total retail value[7] of the drugs was $22,000.00. *Id.* at 189. Greenawald testified that the police recovered approximately 670 to 1,300 individual doses of heroin and fentanyl with an estimated wholesale value of $1,300.00 and a retail value of $3,900.00. With respect to the methamphetamine, police recovered approximately 2,700 to 3,600 individual doses, with an estimated wholesale value of $5,000.00[8] and a retail value of $21,000.00. *Id.* With

---

[6] Greenawald testified that "wholesale value" refers to the value of the drugs sold in large quantities, typically from a larger dealer to a smaller dealer down the chain, but not to specific end-users. *Id.* Greenawald explained that "wholesale value" is often discounted. *Id.*

[7] Greenawald testified that "retail value" refers to the "street" value, typically when a drug is sold from a small-time dealer to a user. *Id.*

[8] Greenawald did not specifically testify to this number. Rather he testified that police recovered approximately 217 grams, each costing approximately $23.

respect to the marijuana, police recovered approximately 200 individual doses of marijuana. *Id.* at 190-91. Greenawald did not estimate the marijuana's value, due to the value of marijuana being based upon its potency. *Id.*

Carter testified in her own defense. *Id.* at 202-36. Carter admitted to being a drug addict and user. *Id.* She also admitted to owning the tote bags, the marijuana contained in the mason jar, and at least some of the heroin, fentanyl, and methamphetamine; however, she stated it was all for her own personal use. *See id.* at 47-48, 127, 132 (description of items contained in tote bags); *see also id.* at 206-09, 211-17, 227-30 (Carter testifying she owned tote bags and various items). Carter testified that Walters was selling drugs to her. *Id.* at 211-13, 233-35. Carter stated that it was common for people to come visit her residence and do drugs with her. *Id.* Additionally, Carter testified that she no longer lived at the apartment regularly because the landlord had shut off the water and, at some time in 2018, Carter had left the apartment and began living in several different places including with a friend, in Carter's car, or with Carter's daughter, Megan Truscott. *Id.* Carter admitted owning the clothing found in the rear bedroom of the West Norwegian Street apartment. *Id.* at 223. Carter also testified that she did not know any of the guns were in the residence, but she admitted to owning the taser. *Id.* at 216-17, 230-33.

On February 12, 2020, Carter proceeded to a jury trial, after which she was convicted of two counts of person not to possess a firearm,[9] four counts of possession with intent to deliver a controlled substance (PWID),[10] seven counts of possession of a controlled substance,[11] one count of possession of drug paraphernalia,[12] and one count of possession of a prohibited offensive weapon.[13] The trial court ordered the preparation of a pre-sentence investigation report (PSI) and deferred sentencing. On March 30, 2020, the trial court sentenced Carter to an aggregate term of 15 to 30 years in prison.

On May 28, 2020, Carter sent a letter to the trial court in which she stated that she desired to file a direct appeal. Ultimately, the trial court considered this letter to be a petition under the Post Conviction Relief Act (PCRA), *see* 42 Pa.C.S.A. §§ 9541-9546, and appointed PCRA counsel. After PCRA proceedings, the court denied relief and Carter appealed to this Court. This Court determined that Carter had been deprived of her direct appeal rights and remanded the matter to the trial court to reinstate Carter's direct appeal rights *nunc pro tunc*. **See Commonwealth v. Carter**, 273 A.3d 1076 (Pa. Super. 2022) (Table).

---

[9] 18 Pa.C.S.A. § 6105(a)(1).

[10] 35 P.S. § 780-113(a)(30).

[11] **Id.** at § (a)(16).

[12] **Id.** at § (a)(32).

[13] 18 Pa.C.S.A. § 908(a).

Upon remand, the trial court appointed Attorney Fiorillo to represent Carter on direct appeal. Carter subsequently filed a *nunc pro tunc* notice of appeal. The trial court ordered Carter to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and, in response, Attorney Fiorillo filed an **Anders** brief.[14] **See** Pa.R.A.P. 1925(c)(4). Counsel subsequently filed, with this Court, an application to withdraw as counsel, and a brief pursuant to **Anders**. Carter filed a *pro se* application for substitute counsel, in which she requested that this Court appoint alternative counsel to represent her on appeal. This Court denied Carter's application as, pursuant to **Anders** and its progeny, she is required to either file a *pro se* response or hire alternative counsel. **See** Order, 11/3/22, at 1. Subsequent to our order, Carter filed a *pro se* response to counsel's **Anders** brief.

When counsel files an **Anders** brief, and the appellant files a *pro se* or counseled response, this Court will first determine whether counsel has complied with the dictates of **Anders** and **Santiago**. **See Commonwealth v. Bennett**, 124 A.3d 327, 333 (Pa. Super. 2015) (outlining proper procedure where counsel files **Anders** brief and appellant files *pro se* response). If counsel has complied with the dictates of **Anders** and **Santiago**, we will address the issues raised in the **Anders** brief and conduct our independent

---

[14] We observe that the **Anders** brief filed in the trial court is identical to the one Attorney Fiorillo filed with this Court. Additionally, we note that counsel is not required to file an **Anders** brief with the trial court, rather counsel should file a statement of intent to file **Anders**. **See** Pa.R.A.P. 1925(c)(4). Nevertheless, Attorney Fiorillo's **Anders** brief conveys that intent, and we proceed to the **Santiago** technical requirements and issues contained within.

- 7 -

examination of the record as to those issues. ***See id.*** Finally, if we determine those issues to be without merit, we next examine the appellant's *pro se* allegations. ***See id.*** In doing so, "[this] Court is limited to examining only those issues raised and developed in the brief[; w]e do not act as, and are forbidden from acting as, appellant's counsel." ***Id.***

Pursuant to ***Anders***, when counsel believes that an appeal is frivolous and wishes to withdraw from representation, counsel must:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to defendant and advise [her] of [her] right to retain new counsel or to raise any additional points that [s]he deems worthy of the court's attention. The determination of whether the appeal is wholly frivolous remains with the court.

***Commonwealth v. Burwell***, 42 A.3d 1077, 1083 (Pa. Super. 2012) (citation omitted).

Additionally, the Pennsylvania Supreme Court has explained that a proper ***Anders*** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

After determining that counsel has satisfied the technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appears on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

Instantly, our review of counsel's *Anders* brief and application to withdraw reveals that counsel has substantially complied with the technical requirements of *Santiago*. *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007) (counsel must substantially comply with requirements of *Anders*). We note that counsel frames the issues in terms of whether they have arguable merit, and, in the factual summary, does not provide citations to the record. However, in the argument section, counsel identifies potential issues that could be raised, cites to the record where appropriate, and concludes that the appeal is frivolous. Additionally, counsel indicates that he has made a conscientious review of the record. The record further reveals that counsel has furnished a copy of the *Anders* brief to Carter, advised Carter of her right to retain new counsel or proceed *pro se*, or raise any additional points that she deems worthy of this Court's attention. Attorney Fiorillo has substantially complied with the requirements for withdrawing from representation and, therefore, we will examine the record and make an independent determination of whether Carter's appeal is, in fact, wholly frivolous.

- 9 -

In the **Anders** brief, counsel first challenges the sufficiency of the evidence. **Anders** Brief, at 11-15. In particular, counsel contends that the Commonwealth failed to demonstrate Carter was in constructive or actual possession of any of the illicit items. **Id.**

When examining a challenge to the sufficiency of the evidence, we adhere to the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilty may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

**Commonwealth v. Smith**, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

Section 6105 of the Pennsylvania Uniform Firearms Act provides, in relevant part, as follows:

> **§ 6105. Persons not to possess, use manufacture, control, sell or transfer firearms**

**(a) Offense defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer[,] or manufacture or obtain a license to possess, use, control, sell, transfer[,] or manufacture a firearm in this Commonwealth.

* * *

**(c) Other persons.--**In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

* * *

(2) A person who has been convicted of an offense under . . . The Controlled Substance Drug, Device, and Cosmetic Act [(the Act)], or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

18 Pa.C.S.A. § 6105(a)(1), (c)(2).

A person commits the crime of prohibited offensive weapons "if, except as authorized by law, [she] makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." *Id.* at 908(a).  Section 908 includes "tasers or other electronic or electric weapons" in its definition of "offensive weapons." *Id.*

Possession of a controlled substance is defined as:

Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under [The Controlled Substance, Drug, Device and Cosmetic Act (the Act)], or a practitioner not registered or licensed by the appropriate State

- 11 -

board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by [the Act].

35 P.S. § 780-113(a)(16). The Act further defines possession of drug paraphernalia, in relevant part, as "[t]he use of, or possession with intent to use, drug paraphernalia for the purpose of . . . packing, repacking, storing, [or] containing . . . a controlled substance in violation of this [A]ct." *Id.* at § (a)(32). Drug paraphernalia includes, but is not limited to,

[s]cales and balances used, intended for use or designed for use in weighing or measuring controlled substances[;] . . . [c]apsules, balloons, envelopes and other containers used, intended for use or designed for use in packing small quantities of controlled substances[; and c]ontainers and other objects used, intended for use, or designed for use in storing or concealing controlled substances.

*Id.* at § 780-102(b)(5), (9), (10).

Possession with the intent to deliver is defined under the Act as "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating delivering or possessing with intent to deliver, a counterfeit controlled substance." *Id.* at § 780-113(a)(30).

An individual can possess firearms and drugs either physically or constructively. Regarding constructive possession, we are guided by the following:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference[,] arising from a set of facts[,] that

- 12 -

possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012).

"To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the appellant." *Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 438 (Pa. Super. 2021). "[C]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (citation omitted).

Regarding the firearms, the Commonwealth and Carter stipulated that she had a prior disqualifying conviction of delivery under 35 P.S. § 780-113(a)(30). *See* N.T. Jury Trial, 2/12/20, at 136 (parties stipulating to Carter's disqualifying conviction); *see also* 18 Pa.C.S.A. § 6105(c)(2). Additionally, as noted in our factual summary above, Carter was present in the room with two visible firearms. Carter's purse, identification, and other personal items were located around the room as well. Moreover, Carter testified that she had slept in the dining/living room the night before. *See* N.T. Jury Trial, 2/12/20, at 207-08, 233 (Carter testifying she stayed overnight at residence, and woke up to purchase drugs from Walters). Therefore, the Commonwealth presented sufficient evidence to sustain Carter's convictions of person not to possess. *See* 18 Pa.C.S.A. § 6105(a); *see also Johnson*, *supra*; *Smith*, *supra*. Furthermore, regarding Carter's

conviction of prohibited weapons, she testified that she owned the taser, which is a prohibited weapon. N.T. Jury Trial, 2/12/20, at 220-21; *see also* 18 Pa.C.S.A. 908(a).

Regarding Carter's possession of the drugs and paraphernalia, we likewise conclude that the Commonwealth presented sufficient evidence to sustain these convictions. In particular, as noted above, Carter was in the dining/living room all night, including when the police entered on the morning of May 1, 2019. Almost all of the narcotics and paraphernalia Carter was charged with possessing were located in various tote bags that Carter admitted were hers. *See* N.T. Jury Trial, 2/12/20, at 206-09, 211-17, 227-30. Additionally, Carter testified that the methamphetamine, heroin, fentanyl, and at least some of the marijuana were hers. *Id.* at 206-09, 211-17, 227-30. In light of the totality of the evidence, we conclude that the Commonwealth presented sufficient evidence that Carter either physically or constructively possessed the drugs and paraphernalia. *See Brown*, *supra*; *Johnson*, *supra*.

Regarding Carter's convictions of possession with intent to deliver, we conclude that the Commonwealth also presented sufficient evidence to sustain these convictions. Notably, the jury is free to believe all, part, or none of the evidence. *See Smith*, *supra*. Here, the Commonwealth presented the testimony of O'Doherty and Walters, who both testified that Carter had conducted drug deals with them. In particular, O'Doherty and Carter conducted a drug deal on April 30, 2019, the day before the police executed

their search warrant. Walters testified that he arrived at the residence early in the morning of May 1, 2019, in order to purchase drugs from Carter. He further testified that he was actively purchasing the drugs from Carter, who was holding the drugs, as the police entered the residence. Moreover, the Commonwealth presented the expert testimony of Greenawald, who rendered his expert opinion that Carter possessed quantities of narcotics so large that they were intended to be distributed rather than purely used personally. As stated above, Greenawald also concluded that the sheer amount and type of paraphernalia indicated that drugs were being sold, rather than just consumed. N.T. Jury Trial, 2/12/20, at 184-95 (Greenawald concluding number of scales, needles, glassine baggies, and other paraphernalia indicative of drug sales).

In light of the foregoing, we conclude that the Commonwealth presented sufficient evidence to sustain each of Carter's convictions. Accordingly, these challenges lack merit and we address the second claim in counsel's ***Anders*** brief.

In the second claim, counsel argues that Carter's sentence was manifestly excessive. ***Anders*** Brief, at 15-17. Carter's claim challenges the discretionary aspects of her appeal, from which there is no automatic right to appeal. ***See Commonwealth v. Austin***, 66 A.3d 798, 807-08 (Pa. Super. 2013). Rather, when an appellant challenges the discretionary aspects of her sentence, we must consider her brief on this issue as a petition for permission

to appeal. ***Commonwealth v. Yanoff***, 690 A.2d 260, 267 (Pa. Super. 1997).

Prior to reaching the merits of a discretionary issue,

> [this Court conducts] a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Carter filed a *nunc pro tunc* notice of appeal. However, Carter did not raise an objection at the time of sentencing, nor did she file a post-sentence motion raising this claim. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 282-83 (Pa. Super. 2009) (challenge to discretionary aspects of sentence waived when appellant failed to preserve challenge at sentencing or post-sentence motion). Accordingly, Carter has not properly invoked this Court's jurisdiction, and her discretionary sentencing claim is not preserved for our review. ***See id.***; ***see also Moury***, ***supra***.

Nevertheless, we review the merits of Carter's claim as part of our independent review of the record.[15] ***See Dempster***, ***supra***. Our review of the record reveals that, at sentencing, the trial court considered testimony

_____

[15] We note that Attorney Fiorillo has failed to include a Rule 2119(f) statement in the ***Anders*** brief; however, this omission is not an impediment to our review in this case. ***See Commonwealth v. Zeigler***, 112 A.3d 656, 661 (Pa. Super. 2015) (where counsel filed ***Anders*** brief, this Court reviewed discretionary sentencing claim even absent Rule 2119(f) statement).

and letters from one of Carter's daughters, Megan Truscott, Carter's lifelong best friend, Linda Olano, the pastor at Carter's church, Jeremy Smallwood, and Ashley Stumhofer, a fellow inmate. *See* N.T. Sentencing, 3/20/20, at 7-19, 22-23. These letters each detailed Carter's struggle with addiction, as well as her positive impact on the community and her family. *Id.* The trial court also heard Carter's personal statement concerning her struggles with addiction and remorse for her actions. *Id.* at 19-22. Additionally, the trial court considered Carter's prior record score, and the PSI. *See id.* at 19; *see also Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (where sentencing court considered PSI, this Court presumes that it "[is] aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Accordingly, Carter's claim lacks merit.

We now turn to the issues raised in Carter's *pro se* response:

[1.] Was counsel ineffective for failing to raise meritorious issues and filing an *Anders* [b]rief?

[2.] Was [the] search warrant illegally obtained [in] violat[ion of Carter]'s Constitutional rights?

[3.] Whether the evidence was sufficient to support the conviction[.]

[4.] Did the court abuse its discretion in excessively sentencing [Carter]?

*Pro Se* Response to *Anders* Brief, at 4.

Carter's first claim sounds in ineffective assistance of counsel,[16] which is only cognizable in a Post Conviction Relief Act (PCRA), *See* 42 Pa.C.S.A. §§ 9541-9546, petition. Generally, allegations of ineffective assistance of counsel may not be considered on direct review. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013). Instead, a defendant must defer claims of ineffective assistance of counsel to PCRA review, unless: (1) the claim of ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration serves the interest of justice, or (2) there is good cause shown and the defendant has given a knowing and express waiver of [her] right to seek subsequent PCRA review. *Id.* At 563-64.

Instantly, Carter has not satisfied either of the *Holmes* exceptions and, thus, we are constrained to dismiss her claims of ineffective assistance of counsel without prejudice to her ability to raise them again on collateral review.

In her second claim, Carter argues that the Commonwealth's search warrant was illegally obtained. *Pro Se* Response to *Anders* Brief, at 13-15. She contends that the search warrant was based upon purported sales made to a confidential informant (CI). *Id.* In particular, Carter argues that the

---

[16] In her first claim, Carter asserts that her trial counsel and appellate counsel are both ineffective for failing to raise meritorious claims.

Similarly, we observe that Carter appears to challenge appellate counsel's ineffectiveness for failing to raise sufficiency and sentencing challenges. However, as discussed above, appellate counsel did raise those claims in the *Anders* brief, but concluded they lacked merit. Moreover, we addressed these claims and, likewise, concluded that they were meritless.

search warrant should have been suppressed because the CI never testified and was unreliable. *Id.*

Preliminarily, we conclude that this claim is waived. A brief review of the record reveals that there was never any challenge made to the veracity or legality of the search warrant. Nor were any challenges made regarding a CI or lack thereof. As, this claim was not raised in the trial court, we may not review it on appeal. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived"). Accordingly, this claim is waived.

In her third claim, Carter purports to challenge the sufficiency of the evidence for each of her convictions. *See Pro Se* Response to *Anders* Brief, at 16-18.

Throughout this section of her brief, Carter actually raises several issues regarding admissibility of evidence, discovery, and ineffectiveness of trial counsel in impeaching witnesses. None of these challenges go to the sufficiency of the evidence and are not fairly suggested thereby. Thus, these claims are waived. *See* Pa.R.A.P. 2116(a). Additionally, our review of the record reveals that none of her evidentiary or discovery claims were preserved at trial and, thus, they are waived on this basis as well.[17,18] *See* Pa.R.A.P.

_____

[17] We further observe that Carter does not direct our attention to anywhere in the record that these claims were preserved for our review. *See* Pa.R.A.P. 2119(e) (requiring record citations to where issue is preserved).

[18] With respect to Carter's ineffective assistance of counsel claim, she has failed to identify a *Holmes* exception and, thus, this claim is more properly
*(Footnote Continued Next Page)*

302(a). Moreover, we addressed the sufficiency of the Commonwealth's evidence above.

In her fourth claim, Carter contends that her sentence was excessive. *See Pro Se* Response to *Anders* Brief, at 18-20. Carter argues that her sentence was excessive because the trial court allowed illegally obtained evidence to be presented to the jury and ran her sentences consecutively. *Id.* Additionally, Carter raises a sub-claim challenging one of the trial court's jury instructions regarding constructive possession. *Id.*

Preliminarily, we observe that Carter, like Attorney Fiorillo, fails to satisfy the jurisdictional requirements to address a discretionary sentencing claim.[19] *See Moury*, *supra*; *see Gibbs*, *supra*. Additionally, Carter's sub-claim that the trial court issued an incorrect jury instruction was not raised in the trial court and, thus, is waived. *See* Pa.R.A.P. 302(a).

In light of the foregoing, we conclude that this appeal is meritless and grant counsel's application to withdraw. In addition, Carter failed to present any meritorious claims in her *pro se* response. Thus, we dismiss Carter's claims that sound in ineffective assistance of counsel without prejudice to her ability to raise them on collateral review.

Judgment of sentence affirmed. Application to withdraw granted.

---

raised in a PCRA petition. *See Holmes*, *supra*. Thus, we dismiss this claim without prejudice to Carter's ability to challenge trial counsel's ineffectiveness on collateral review.

[19] Additionally, we addressed this claim *supra* and concluded it lacked merit.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/17/2023